STATE OF NORTH CAROLINA v. MITCHELL JOHN PAKULSKI AND ELLIOTT CLIFFORD ROWE

No. 256PA85

(Filed 2 June 1987)

1. **Criminal Law § 128.2— jury deadlock—mistrial—no double jeopardy by subsequent trials**

It is clear from the record that there was a jury deadlock warranting a mistrial in defendants' original trial for first degree murder so that their second and third trials did not violate their rights against double jeopardy where the record showed that on the first day of deliberations, the jury foreman expressed his concern that the jury could not reach a verdict, one defendant moved for a mistrial, and the motion was denied; on the morning of the second

day of deliberations, the foreman again expressed concern that the jury could not reach a decision, and the court again denied a motion for a mistrial; and on the afternoon of the second day of deliberations, the court determined that there was a genuine deadlock and declared a mistrial. Moreover, the trial court's failure initially to make findings in support of the mistrial declaration does not alter this result.

**2. Homicide § 21.6; Robbery § 4.3— felony murder—armed robbery—taking property after victim killed**

There was sufficient evidence of armed robbery to support submission of a felony murder charge to the jury where the evidence tended to show that defendants ransacked a doctor's office; when deceased entered as part of his rounds as a security guard, defendants attacked him, took his gun, and pinned him to the floor; and one defendant then shot deceased and took money from his person. A homicide victim is still a "person" within the meaning of a robbery statute when the interval between the fatal blow and the taking of property is short.

**3. Homicide § 21.6— felony murder—breaking or entering—failure to prove possession of deadly weapon**

Where the State failed to prove possession of a deadly weapon at the time of a felonious breaking or entering, that felony could not be used as a predicate to a felony murder charge.

**4. Criminal Law § 124.2— felony murder—felonies in disjunctive—one felony unsupported by evidence—new trial**

Defendant is entitled to a new trial on a felony murder charge where armed robbery and felonious breaking or entering were submitted in the disjunctive as possible felonies supporting a felony murder conviction, the evidence was insufficient for submission of felonious breaking or entering as the underlying felony, and the theory upon which the jury relied cannot be discerned from the record.

**5. Criminal Law § 119— failure to give requested instruction—harmless error**

Although an instruction on prior inconsistent statements was warranted where defense counsel questioned a State's witness about inconsistent statements he made to the police and at previous trials, the trial court's failure to give defendant's requested instruction on prior inconsistent statements was not prejudicial error where the court instructed the jury that the witness had been granted complete immunity, that he was an interested witness, and that the jury should, in assigning weight and credibility to his testimony, "carefully examine his testimony and scrutinize it with care."

BEFORE *Fountain, J.,* and a jury at the 29 October 1984 Criminal Session of Superior Court, HAYWOOD County, the defendants were found guilty of first-degree felony murder, larceny of a motor vehicle, felonious breaking or entering and larceny, robbery with a firearm, and conspiracy to commit felonious breaking or entering and larceny. The jury recommended that both de-

fendants be sentenced to life imprisonment on the murder conviction, and they were so sentenced. The defendants were also sentenced to a term of ten years for the offense of larceny of a motor vehicle and a sentence of ten years for the offense of conspiracy to commit breaking or entering and larceny. The trial court arrested judgment on the felonious breaking or entering and larceny verdict and on the robbery with a firearm verdict. Defendants' notices of appeal were filed one day late; however, their petition to this Court for writ of certiorari was granted on 11 June 1985. Heard in the Supreme Court 12 March 1987.

*Lacy H. Thornburg, Attorney General, by David Roy Blackwell, Assistant Attorney General, for the State.*

*Ann B. Petersen for defendant-appellant Pakulski.*

*Gordon Widenhouse for defendant-appellant Rowe.*

MEYER, Justice.

Following two mistrials, a Haywood County jury found each of the defendants guilty of first-degree murder under a theory of felony murder. Judgments of conviction and sentences of life imprisonment were entered on 17 November 1984. Judgments were arrested on the offenses of armed robbery and felonious breaking or entering, as these offenses formed the offenses upon which the convictions of felony murder were predicated.

On appeal, defendants bring forward assignments of error relating only to the convictions of felony murder. They argue: (1) that the trial court violated their rights against double jeopardy; (2) that there was insufficient evidence that the murder was committed in the course of an armed robbery or a felonious breaking or entering; (3) that because armed robbery and felonious breaking or entering were submitted in the disjunctive, as possible felonies supporting a felony murder conviction, the defendants were deprived of their right to a unanimous verdict; and (4) that the trial court erred in failing to submit the pattern jury instruction on impeachment of a witness.

We hold that there was insufficient evidence to submit to the jury the charge of felony murder based on felonious breaking or entering as the predicate felony. Because the felonious breaking or entering and armed robbery were submitted in the disjunctive

as predicate offenses of the felony murder, it is impossible to determine from the record whether the jury based its verdict of felony murder on a predicate felony that was improperly submitted. Therefore, we order a new trial.

We find no merit in defendants' contentions that the trial court violated the defendants' rights against double jeopardy. We also hold that the trial court did not commit prejudicial error in failing to submit the pattern jury instruction on impeachment of witnesses.

On Sunday morning, 17 September 1978, Dr. Guy Abbate of Waynesville visited his office on Church Street. There he found the body of Willard Setzer, a private security guard, draped in an American flag and lying on the floor. Abbate's office had been ransacked, and a subsequent inventory revealed that several items, including a kitchen knife, surgical gloves, and syringes, were missing. Dr. Abbate notified law enforcement authorities and an investigation ensued.

On 29 January 1979, a Haywood County grand jury returned true bills of indictment against defendants Mitchell John Pakulski and Elliott Clifford Rowe, charging them with first-degree murder of Willard Setzer. Because of extradition litigation in Ohio and later in the federal court (see *Pakulski v. Hickey*, 731 F. 2d 382 (6th Cir. 1984); *In re Rowe*, 67 Ohio St. 2d 115, 423 N.E. 2d 167 (1981)), the defendants were not transported to North Carolina until 9 March 1984. On 5 April 1984, the Haywood County grand jury returned additional indictments charging defendants with robbery of Setzer with a dangerous weapon, larceny of Setzer's automobile, felonious breaking or entering of Dr. Guy Abbate's office, felonious larceny and possession of property belonging to Dr. Abbate, conspiracy to commit murder, and conspiracy to break or enter.

All charges were consolidated for trial. The case was first called to trial at the 24 April 1984 Special Session of Superior Court, Haywood County. After deliberating for approximately two hours on the evening of 24 May 1984 and for three hours on the morning of 25 May, the jury was unable to reach a verdict and a mistrial was declared. A second trial was held in July 1984, and once again a mistrial was declared because the jury was unable to reach a verdict.

The matter came on for trial a third time at the 29 October 1984 Criminal Session of Haywood County Superior Court. The State's case hinged on the eyewitness testimony of David Chambers, an accomplice of defendants who testified in return for a grant of immunity. The State also offered testimony of law enforcement personnel involved in the investigation of the murder. The State's evidence tended to show the following:

Along with Chambers, both defendants went to Dr. Abbate's office on the evening of 16 September 1978. Rowe broke a window in order to enter the office and then let Chambers and Pakulski in through the front door. Pakulski and Rowe ransacked the office and put valuable items in a plastic bag. The items taken included a syringe-like item.

About ten minutes after defendants entered Abbate's office, Willard Setzer arrived. Rowe hit Setzer on the side of the head with a paint bucket. Setzer fell to the floor and drew his pistol from its holster. Pakulski took the pistol, and Rowe tripped Setzer from behind as he was getting up. Pakulski then fired a single shot into Setzer's head behind his right ear lobe. Pakulski and Rowe then picked Setzer's pockets, removing his money, gun, and wallet.

The regional pathologist, Dr. Robert S. Boatwright, testified that he first examined Setzer's body on the afternoon of Sunday, 17 September 1978. Based on his locating and removing a .22-caliber bullet from Setzer's brain, Boatwright opined that Setzer died of a gunshot wound.

Dan Crawford, the State Bureau of Investigation resident agent for Haywood County, testified that he assisted in the investigation. He observed Mr. Setzer's body on the floor in Dr. Abbate's office and observed that Setzer's Smith and Wesson .22-caliber magnum handgun was missing.

At the time of the murder, law enforcement officials were unable to locate Setzer's 1975 blue Chevrolet Nova. After entering registration information on the national computer network, they located the vehicle in Dayton, Ohio. A catheter syringe-type device and Setzer's notebook were found inside the car. Law enforcement officials were unable to lift latent fingerprints from the car.

Defendants presented alibi evidence indicating that they were in Toledo, Ohio, on the weekend of the murder. They also presented numerous witnesses who contradicted Chambers' testimony.

At the close of the State's evidence, the trial court dismissed the charge of conspiracy to commit murder. At the close of all the evidence, the trial court ruled that the evidence was insufficient to submit the charge of first-degree murder on a theory of premeditation and deliberation. Thus, with respect to the murder charge, the jury was instructed on felony murder based on felonious breaking or entering and armed robbery.

The jury returned verdicts finding each of the defendants guilty of first-degree felony murder, felonious larceny of a motor vehicle, felonious breaking or entering, armed robbery, and conspiracy to break and enter.

After a sentencing hearing, each defendant was sentenced to life imprisonment on the murder conviction. For the larceny of a motor vehicle, each defendant was sentenced to a prison term of ten years. For the conspiracy offense, each defendant was sentenced to a concurrent term of ten years. The trial court arrested judgment on the armed robbery and felonious breaking or entering verdicts, as these were submitted as predicate felonies to the felony murder.

I.

[1] In their first argument, defendants contend that the mistrial concluding the first trial was not properly entered. Thus, they argue, the second and third trials violated their rights against double jeopardy as secured by the fifth and fourteenth amendments to the United States Constitution and Article I, § 19, of the North Carolina Constitution. Specifically, defendants complain that the trial court erred in failing to make findings of fact to support the declaration of mistrial.

The jury began its deliberation on the afternoon of 24 May 1984. On that evening, after dinner, the foreman reported to the court that there were some differences among the jurors. The court then requested that the jury break for the evening and return in the morning. Defendant Pakulski then moved for a mistrial, and the motion was denied.

On the following morning, the jury resumed deliberations at 9:20 a.m. At 9:51 a.m., they returned to the court and the foreman stated that they were unable to reach a verdict. The court then instructed the jury in accordance with N.C.G.S. § 15A-1235 on its duty to deliberate. Defendants then moved for a mistrial, and the motion was denied.

The jurors took a lunch break between 12:20 p.m. and 1:25 p.m. When they returned, the following exchange took place between Judge Burroughs and the foreman:

COURT: Mr. Cox, do you feel like you're making any progress?

MR. COX: No, sir.

COURT: Do you think you're hopelessly deadlocked?

MR. COX: Yes, sir, I do.

COURT: All right, I'll withdraw juror No. 12 and declare a mistrial. Juror No. 12 is withdrawn.

The record contains no contemporaneous findings of fact to support the mistrial declaration. Nor does the record contain any defense counsel objection to the failure to make findings of fact in support of the mistrial declaration.

On 6 July 1984, prior to the second trial, defendant Pakulski moved to dismiss on the basis of double jeopardy and the failure of the trial court to make findings of fact with respect to the mistrial declaration, as required by N.C.G.S. § 15A-1064. The motion was denied and a *nunc pro tunc* order of mistrial, containing proper findings, was entered.

It is well settled that the prohibition against double jeopardy does not prevent a defendant's retrial when his previous trial ended in a hung jury. *State v. Odom*, 316 N.C. 306, 341 S.E. 2d 332 (1986); *United States v. Perez*, 22 U.S. (9 Wheat) 579, 6 L.Ed. 165 (1824). Also, this Court has held that the decision to order a mistrial lies within the discretion of the trial judge. *State v. Alston*, 294 N.C. 577, 243 S.E. 2d 354 (1978). *See also Arizona v. Washington*, 434 U.S. 497, 54 L.Ed. 2d 717 (1978).

In a capital case, the trial court has no authority to discharge the jury without the defendant's consent, unless on the basis of

manifest necessity. *State v. Crocker*, 239 N.C. 446, 80 S.E. 2d 243 (1954). Long ago, Chief Justice Ruffin observed that, in a capital case, "generally speaking, such necessity must be set forth in the record." *State v. Ephraim*, 19 N.C. (2 Dev. & Bat.) 162, 166 (1836).

In 1977, the General Assembly extended the rule requiring the findings of fact to all cases in which mistrial is ordered. N.C.G.S. § 15A-1064 provides:

> Before granting a mistrial, the judge must make finding of facts [sic] with respect to the grounds for the mistrial and insert the findings in the record of the case.

N.C.G.S. § 15A-1064 (1983).

Unless timely objected to by defense counsel, a trial court's failure to make findings in support of a mistrial is not subject to appellate review. *State v. Odom*, 316 N.C. 306, 341 S.E. 2d 332; N.C.R. App. P. 10(b)(2). However, in a *capital* case, the failure to object to a mistrial declaration will not prevent a defendant from assigning the declaration of mistrial as error on appeal. *State v. Lachat*, 317 N.C. 73, 343 S.E. 2d 872 (1986).

Defendants argue that this Court's decision in *State v. Lachat*, 317 N.C. 73, 343 S.E. 2d 872, controls the disposition of this case. An examination of the factual setting and holding in *Lachat* is therefore appropriate.

In *Lachat*, the defendant was first tried for murder in August 1984. During the first trial, the court initially withdrew a juror and declared a mistrial in response to the foreman's statement that the jury was having a difficult time moving forward. The court communicated to the jurors that it did not believe the jury could reach a verdict and that the case would be tried at some later date by another jury. However, as the court was about to dismiss the jurors, the foreman stated that the jury was willing to keep trying; other jurors stated that they would try to reach a verdict and that the foreman did not adequately represent the views of the jury when he stated that they could not reach a verdict. The court then struck the withdrawal of the juror and continued the trial. On the following day, the foreman once again stated that the jurors could not reach a decision; the court withdrew a juror and declared a mistrial without making findings for the record. Four months later, on the second day of defend-

ant's second trial, the court denied defendant's motion to dismiss on the basis of double jeopardy and made findings and conclusions concerning the necessity for the first mistrial. We held:

> Given the foregoing facts, it is clear that the initial declaration of a mistrial during the defendant's first trial on the capital charge against her was not the result of manifest necessity and, therefore, was error. We are unable to determine on the record before us whether the error in initially declaring a mistrial caused the jury to fail to reach agreement thereafter and deprived the defendant of a verdict. Therefore, we are required to hold that the trial court erred when it later denied the defendant's motion to dismiss the charge of murder in the first degree against her for the reason that she had formerly been placed in jeopardy for the same offense.

*Lachat*, 317 N.C. at 85, 343 S.E. 2d at 878.

The present case is readily distinguishable from *Lachat*. Here, there was no initial mistrial declaration and subsequent attempt to reinstate jurors. In fact, in *Lachat*, Justice Mitchell wisely foresaw the need

> to make it clear, however, that this opinion does not address and is not dispositive of those cases in which manifest necessity for a mistrial clearly appears in the record . . . .

*Id.* at 87, 343 S.E. 2d at 879.

A jury's failure to reach a verdict due to deadlock is "manifest necessity" justifying declaration of a mistrial. *State v. Simpson*, 303 N.C. 439, 279 S.E. 2d 542 (1981); N.C.G.S. § 15A-1235(d) (1983). Jury deadlock is certainly apparent in the record of the present trial. On the first day of deliberations, the foreman expressed his concern that the jury could not reach a verdict; defendant then moved for a mistrial. On the morning of the second day of deliberations, the foreman again expressed concern that the jury could not reach a decision, and defendant again moved for a mistrial. Finally, on the afternoon of the second day of deliberations, the court determined that there was genuine deadlock and declared a mistrial.

That the court initially failed to make findings in support of the mistrial declaration does not alter the record, from which it is clear that there was deadlock warranting a mistrial. We find no violation of the double jeopardy provisions.

## II.

## A.

By their second argument, defendants contend that there was insufficient evidence of breaking or entering or of robbery to support submission of the felony murder charge.

At trial, defendants moved to dismiss on the grounds that there was insufficient evidence to permit the court to charge the jury on a theory of felony murder. The court denied the motion and instructed the jury on the underlying felonies of armed robbery and breaking or entering.

In reviewing the denial of a motion to dismiss, this Court examines the evidence adduced at trial in the light most favorable to the State, in order to determine whether there is substantial evidence of every essential element of the crime. *State v. McKinnon*, 306 N.C. 288, 293 S.E. 2d 118 (1982). Applying that standard, we address defendants' contentions with respect to each felony submitted as a basis for the felony murder charge.

### 1. ARMED ROBBERY.

[2] A murder committed in the perpetration of any robbery is murder in the first degree. N.C.G.S. § 14-17 (1986). Armed robbery is "(1) the unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened." *State v. Beaty*, 306 N.C. 491, 496, 293 S.E. 2d 760, 764 (1982). The use or threatened use of a dangerous weapon must precede or be concomitant with the taking or be so joined with it in a continuous transaction by time and circumstances as to be inseparable. *State v. Hope*, 317 N.C. 302, 345 S.E. 2d 361 (1986).

Defendants argue that because Setzer was killed before any items were removed from his person, the robbery was merely an afterthought and not part of one continuous chain of events. We disagree.

Defendants analogize their position to that of the defendant in *State v. Powell,* 299 N.C. 95, 261 S.E. 2d 114 (1980). In that case, the defendant was convicted of first-degree murder, in the perpetration of first-degree rape and robbery with a dangerous weapon. We held that there was insufficient evidence to support the submission of the armed robbery charge. Defendant's possession of a television set and an automobile after the victim's death did not give rise to an inference that the defendant took the objects from the victim's presence by use of a dangerous weapon. The evidence indicated "only that defendant took the objects as an afterthought once the victim had died." *Id.* at 102, 261 S.E. 2d at 119.

The present case is readily distinguishable from *Powell.* First, here, the items were removed from the person of the victim; in *Powell,* the objects taken were a television set and an automobile, neither of which is carried on one's person. Second, in the present case, unlike *Powell,* there was abundant evidence that removing money from the person of Setzer was more than a mere afterthought to the killing. The State's evidence established that defendants ransacked Dr. Abbate's office. When Setzer entered as part of his rounds as a security guard, defendants attacked him, took his gun, and pinned him to the floor. Defendant Pakulski then shot Setzer and took money *from his person.* A homicide victim is still a "person," within the meaning of a robbery statute, when the interval between the fatal blow and the taking of property is short. *State v. Fields,* 315 N.C. 191, 337 S.E. 2d 518 (1985); 2 W. LaFave and A. Scott, *Substantive Criminal Law* § 8.11(c) at 443 (1986).

Based on our review of the evidence, viewed in the light most favorable to the State, we find that there was sufficient evidence to warrant an instruction allowing the jury to find that the murder was committed in the course of an armed robbery.

2. FELONIOUS BREAKING OR ENTERING.

[3]   Felony murder includes murder "committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, *or other felony committed or attempted with the use of a deadly weapon.*" N.C.G.S. § 14-17 (1986) (emphasis added). Defendants argue that because the initial breaking into Dr. Abbate's office was not accomplished with a

deadly weapon, the breaking or entering may not serve as an underlying felony on which to predicate a felony murder conviction. We agree.

In *State v. Fields*, 315 N.C. 191, 337 S.E. 2d 518, this Court addressed the question of whether N.C.G.S. § 14-17 requires that a defendant effectuate the "other felony" with a deadly weapon or whether mere possession of the deadly weapon during the commission of the predicate felony satisfies the elements of the statute.

In *Fields*, the defendant, while possessing a .38-caliber pistol, broke into a homeowner's storage shed. When a neighbor came by to investigate, defendant shot and killed him with the pistol. This Court upheld defendant's conviction of felony murder and held that the homicide was "effected during the perpetration of a felony committed with the use of a deadly weapon." *Id.* at 200, 337 S.E. 2d at 523.

In response to defendant's contention that he did not use a weapon to accomplish the breaking into the storage shed, the *Fields* Court observed:

We hold that possession is enough, and the defendant is guilty of felony murder, even if the weapon is not physically used to actually commit the felony. If the defendant has brought the weapon along, he has at least a psychological use for it: it may bolster his confidence, steel his nerve, allay fears of his apprehension. Even under circumstances where the weapon is never used, it functions as a backup, an inanimate accomplice that can cover for the defendant if he is interrupted.

*Id.* at 199, 337 S.E. 2d at 523.

In the present case, the State concedes that defendants did not use a deadly weapon to accomplish the breaking into Dr. Abbate's office. Moreover, there is no evidence that defendants even possessed a deadly weapon when they broke into Dr. Abbate's office. Thus, the State failed to prove possession of a deadly weapon at the time of the felonious breaking or entering. Accordingly, that felony may not be used as a predicate to a felony murder charge.

## B.

[4] The State contends that error in submitting the breaking or entering felony is harmless because the jury could have based its verdict solely on the robbery felony. The State's argument, while superficially appealing, overlooks that the verdict form does not reflect the theory upon which the jury based its finding of guilty of felony murder. Where the trial judge has submitted the case to the jury on alternative theories, one of which is determined to be erroneous and the other properly submitted, and we cannot discern from the record the theory upon which the jury relied, this Court will not assume that the jury based its verdict on the theory for which it received a proper instruction. Instead, we resolve the ambiguity in favor of the defendant. *E.g., State v. Belton*, 318 N.C. 141, 162, 347 S.E. 2d 755, 768 (1986).

It is not clear that the jury found that the murder was committed in the course of an armed robbery. Because it is quite possible that the finding of guilty of felony murder was based on the breaking or entering on which the jury should not have been instructed, we must order a new trial.

Because we must remand the case for a new trial on the first-degree murder charges for insufficiency of the evidence as to breaking or entering committed with the use of a deadly weapon, we need not address defendants' contentions concerning error in the charge relating to the use of the deadly weapon or unanimity of the verdict upon submission of the case on alternative theories. Those issues will not arise on retrial.

## III.

[5] In their final argument to this Court, defendants contend that the trial court erred in failing to give a requested instruction on prior inconsistent statements of a witness. During the instruction conference, defense counsel asked the court to give the pattern instruction on prior inconsistent statements (N.C.P.I.—Crim. 105.20). The judge then stated, "If I overlook that, call it to my attention. I don't think I will." The court never gave the requested instruction.

The State requests that we review this assignment of error under the plain error rule, inasmuch as the omission was not called to the court's attention prior to jury deliberations.

However, based on our reading of the record, it appears that defense counsel complied with the spirit of Appellate Rule 10(b)(2), which in pertinent part provides:

> No party may assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection . . . . An exception to the failure to give particular instructions to the jury . . . shall identify the omitted instruction . . . by setting out its substance immediately following the instructions given . . . .

It is clear from the record that the defendant requested an instruction on impeaching a witness with a prior inconsistent statement. Therefore, our review consists of a determination of whether the court erred in failing to give the requested instruction and, if so, whether there is a reasonable possibility that had the error not been committed, a different result would have been reached. N.C.G.S. § 15A-1443 (1983).

A trial judge is to declare and explain the law arising on the evidence. N.C.G.S. § 15A-1232 (Cum. Supp. 1985). This Court has held that instructions on a witness' credibility relate to a subordinate feature on which the court need not charge absent a request from counsel. *State v. Eakins*, 292 N.C. 445, 233 S.E. 2d 387 (1977).

At trial, David Chambers was extensively cross-examined. Defense counsel questioned Chambers about several inconsistent statements he gave to police in 1978. Defense counsel also questioned Chambers about inconsistencies between his trial testimony and testimony he gave at earlier trials. It therefore appears that an instruction on prior inconsistent statements was warranted. However, the failure to give the requested instruction did not amount to prejudicial error, inasmuch as the court instructed the jury that Chambers had been granted complete immunity, that he was an interested witness, and that the jury should, in assigning weight and credibility to Chambers' testimony, "carefully examine his testimony and scrutinize it with care." Thus, any error in omitting an instruction on prior inconsistent statements was not prejudicial.

In conclusion, we find no error in defendants' convictions for larceny of a motor vehicle, felonious breaking or entering, robbery with a dangerous weapon, and conspiracy to commit breaking or entering. However, we hold that defendants are entitled to a new trial on the first-degree murder charges because of the improper submission of breaking or entering as a possible predicate felony of the felony murder. Because it is impossible to determine from the record whether the jurors based their conviction of felony murder on the breaking or entering, we order a new trial.

As to defendant Pakulski:

No. 79CRS710—First-degree murder—new trial.

No. 84CRS1709—Larceny of a motor vehicle—no error.

No. 84CRS1710—Felonious breaking or entering—no error.

No. 84CRS1711—Robbery with a firearm—no error.

No. 84CRS2027—Conspiracy to commit felonious breaking or entering—no error.

As to defendant Rowe:

No. 79CRS712—First-degree murder—new trial.

No. 84CRS1712—Larceny of a motor vehicle—no error.

No. 84CRS1713—Robbery with a firearm—no error.

No. 84CRS1714—Felonious breaking or entering—no error.

No. 84CRS2029—Conspiracy to commit felonious breaking or entering—no error.

Justice MITCHELL concurs in the result.