IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-947

 Filed: 16 May 2017

Wake County, No. 14 CRS 214112

STATE OF NORTH CAROLINA

 v.

MELVIN LEROY FOWLER, Defendant.

 Appeal by Defendant from judgment entered 2 March 2016 by Judge A.

Graham Shirley in Wake County Superior Court. Heard in the Court of Appeals 8

March 2017.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General
 Christopher W. Brooks, for the State.

 Yoder Law PLLC, by Jason Christopher Yoder, for defendant-appellant.

 HUNTER, JR., Robert N., Judge.

 Melvin Leroy Fowler (“Defendant”) appeals a jury verdict convicting him of

driving while impaired (“DWI”). On appeal, Defendant contends the trial court erred

by: (1) instructing the jury on a theory of impaired driving unsupported by the

evidence, thus violating Defendant’s constitutional right to a unanimous jury verdict;

and (2) allowing Officer Monroe to testify as an expert witness regarding the

horizontal gaze Nystagmus (“HGN”) test. For the following reasons, we grant

Defendant a new trial.
 STATE V. FOWLER

 Opinion of the Court

 I. Factual and Procedural Background

 On 19 June 2014, Officer R. P. Monroe of the Raleigh Police Department

(“RPD”) stopped Defendant and arrested him for DWI. On 24 February 2015, Wake

County District Court Judge James R. Fullwood found Defendant guilty of DWI.

Defendant appealed to superior court for a jury trial, pursuant to N.C. Gen. Stat. §

15A-1431 (2016).

 On 1 March 2016, the trial court called Defendant’s case for trial. The evidence

at trial tended to show the following.

 The State first called Officer Monroe. On Thursday, 19 July 2014, Officer

Monroe worked the night shift for the RPD. Aware the Wake County Sheriff’s Office

set up a checkpoint on Gorman Street, Officer Monroe visited the checkpoint to see if

he could assist.

 Officer Monroe rode down Avent Ferry Road on his motorcycle. When he was

less than a half a mile from Gorman Street, he came to a point where Crest Road T-

intersects with Avent Ferry Road. Officer Monroe saw Defendant’s truck on Crest

Road. Defendant pulled out in front of Officer Monroe’s motorcycle. Officer Monroe

“lock[ed] the bike up”1, “ma[d]e an evasive maneuver”, and “dip[ped]” into the right

lane to avoid hitting Defendant’s truck. Officer Monroe’s motorcycle and Defendant’s

truck came within “maybe two or three feet” of each other. Officer Monroe activated

 1 Officer Monroe explained to “lock the brakes up” means to employ the antilock brake on the
motorcycle.

 -2-
 STATE V. FOWLER

 Opinion of the Court

his blue lights and stopped Defendant for unsafe movement. Defendant stopped his

truck at a stop sign at the intersection of Avent Ferry Road and Champion Court.

 Officer Monroe introduced himself and explained he stopped Defendant

because Defendant almost ran into his motorcycle. Officer Monroe saw Defendant’s

red, glassy eyes. He smelled a “medium” odor of alcohol on Defendant’s breath.

Defendant spoke with slurred speech. Officer Monroe asked Defendant why he pulled

out in front of his motorcycle. Defendant remarked Officer Monroe had enough room

and he “was catching [Officer Monroe’s] curiosity.”

 Officer Monroe asked Defendant if he drank any alcohol that night. Defendant

responded “one to two” servings of Jägermeister, and he was only driving a short

distance. Officer Monroe asked Defendant to get out of his truck to participate in a

series of field sobriety tests. Defendant agreed.

 Officer Monroe conducted three field sobriety tests: HGN, walk-and-turn, and

one-leg stand. Officer Monroe first conducted the HGN test. Officer Monroe turned

Defendant away from traffic, so passing headlights did not affect Defendant’s eyes.

He directed Defendant to stand facing him, with his feet together and hands to the

side. Officer Monroe elevated Defendant’s head slightly and held his finger in front

of Defendant. He informed Defendant he was going to move his finger from left to

right and instructed Defendant to follow his finger with Defendant’s eyes. Defendant

stated he understood the instructions, and Officer Monroe started the test. During

 -3-
 STATE V. FOWLER

 Opinion of the Court

the test, Defendant displayed a lack of “smooth pursuit” in both eyes, which Officer

Monroe considered “two clues.” Defendant ultimately displayed six out of six possible

clues, three in each eye. Based on this test and the odor of alcohol, Officer Monroe

concluded Defendant “had an impairing amount of alcohol in his system.”

 Officer Monroe also conducted two “divided attention” tests. The first test is

the walk-and-turn. Officer Monroe instructed Defendant to place his left foot in front,

with both hands to his sides, and move his right foot heel-to-toe. Officer Monroe told

Defendant to stay in the heel-to-toe position while he gave Defendant further

instructions. Officer Monroe next instructed Defendant to take nine heel-to-toe steps

while keeping his hands at his sides, and counting out loud.

 Defendant failed to follow instructions. Defendant swayed and stepped out of

the starting stance. Officer Monroe instructed Defendant to return to the starting

stance. Defendant then started the test too soon, stepped out of position, and lost his

balance. Officer Monroe again instructed Defendant to stand in the starting position,

but Defendant stepped out. The third time Officer Monroe instructed Defendant to

get back in starting position, Defendant told Officer Monroe he could not do the test.

Defendant then told Officer Monroe he was not going to do the test without his

kneepads. Officer Monroe concluded the test.

 Officer Monroe asked Defendant if he was willing to do the one-leg stand test.

Defendant agreed. Officer Monroe instructed Defendant to keep his feet together,

 -4-
 STATE V. FOWLER

 Opinion of the Court

put his hands to his side, and stay in that position. Defendant was then to lift one

foot with his toes pointed to the ground, and keep his foot parallel with the ground.

While looking at his foot, Defendant would count to three. Next, Defendant should

put his foot down and repeat the lift, as he continued counting from where he left off.

 Defendant swayed when Officer Monroe started the test. Defendant also failed

to follow the instructions. Defendant “barely got his foot off the ground” and failed to

look down at his toes. When Officer Monroe instructed Defendant to lift his foot six

inches off the ground, Defendant told Officer Monroe he did not know how much six

inches was. Officer Monroe offered to demonstrate the test again. Defendant said he

no longer wanted to do the test.

 Officer Monroe told Defendant he would like to take a preliminary sample of

Defendant’s breath. He explained this test was not admissible in court, but rather

just a test for positive or negative of alcohol. Defendant refused.

 Officer Monroe arrested Defendant for DWI. After booking Defendant, Officer

Monroe brought Defendant into the DWI testing room. He presented Defendant with

a form for implied consent. Officer Monroe read Defendant his rights. Defendant

signed the form, acknowledging he understood his rights. Defendant then placed a

call. Officer Monroe did not know if Defendant called someone to observe the

administration of tests.

 -5-
 STATE V. FOWLER

 Opinion of the Court

 Thirty minutes later, Officer Monroe administered the Intoxilyzer test. Officer

Monroe instructed Defendant on how to correctly blow into the breathalyzer.

However, Defendant stopped blowing air into the instrument before Officer Monroe

told him to stop. The instrument “shut[] down” and displayed “insufficient sample.”

Officer Monroe again instructed Defendant on how to correctly blow into the

instrument. Defendant said he had cancer, which prevented him from properly

blowing into the instrument. Defendant then told Officer Monroe he was not going to

blow into the instrument. Officer Monroe explained to Defendant his breathing was

sufficient, but Defendant prematurely stopped blowing. Officer Monroe told

Defendant if Defendant did not blow into the instrument, he was “going to refuse

him.” “Refusing” constitutes pressing the refusal button on the instrument, which

indicates Defendant’s “willful refusal not to provide a breath sample on the

instrument for the purposes of a DWI investigation.”

 The State rested, and Defendant moved to dismiss the case. The trial court

denied Defendant’s motion to dismiss. Defendant did not present any evidence.

Defendant renewed his motion to dismiss, and the trial court denied Defendant’s

motion.

 When discussing jury instructions, the State requested “the .08 instruction.”

Defendant objected to the .08 instruction, because “there was no evidence to [any]

 -6-
 STATE V. FOWLER

 Opinion of the Court

sort of an actual number of any blood alcohol level . . . .” The trial court decided it

would use the .08 instruction and reasoned:

 Well, if you argue they haven’t shown .08 I’m going to give
 that instruction or they haven’t shown his blood alcohol
 content I will give that instruction because you can’t have
 it both ways. You can’t -- you can’t object to the instruction
 and argue that they haven’t shown his [blood alcohol
 content] because there [is] more than one way to prove the
 offense.

 The jury found Defendant guilty of driving while impaired. Defendant

admitted to the existence of two driving while impaired convictions. Defendant

admitted to the aggravating fact of driving while license revoked due to a DWI

conviction. The trial court sentenced Defendant as an Aggravated Level One offender

and sentenced him to 24 months imprisonment. Defendant gave timely oral notice of

appeal.

 II. Standard of Review

 Challenges to the trial court’s “decisions regarding jury instructions are

reviewed de novo by this Court.” State v. Osorio, 196 N.C. App. 458, 466, 675 S.E.2d

144, 149 (2009) (citations omitted). In a de novo review, this Court “considers the

matter anew and freely substitutes its own judgment for that of the lower tribunal.”

State v. Williams, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008)(internal

quotation marks and citation omitted).

 -7-
 STATE V. FOWLER

 Opinion of the Court

 “It is well settled that de novo review is ordinarily appropriate in cases where

constitutional rights are implicated.” Piedmont Triad Reg'l Water Auth. v. Sumner

Hills, Inc., 353 N.C. 343, 348, 543 S.E.2d 844, 848 (2001) (citations omitted). If an

error is preserved for review, but does not arise under the Constitution of the United

States, we review for prejudicial error. N.C. Gen. Stat. § 15A-1443(a) (2016).

 Lastly, in regards to Officer Monroe’s expert opinion testimony, the trial court’s

ruling on expert testimony under Rule 702 is typically reviewed for abuse of

discretion. State v. McGrady, 368 N.C. 880, ___, 787 S.E.2d 1, 11 (2016) (citation

omitted). “And ‘a trial court may be reversed for abuse of discretion only upon a

showing that its ruling was manifestly unsupported by reason and could not have

been the result of a reasoned decision.’” Id. at ___, 787 S.E.2d at 11 (quoting State v.

Riddick, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986)). However, “[w]here the

[defendant] contends the trial court’s decision is based on an incorrect reading and

interpretation of the rule governing admissibility of expert testimony, the standard

of review on appeal is de novo.” State v. Torrence, ___ N.C. App. ___, ___, 786 S.E.2d

40, 41 (2016) (quotation marks and citations omitted).

 III. Analysis

 We review Defendant’s contentions in two parts: (A) jury instructions for

impaired driving under N.C. Gen. Stat. § 20-138.1 (a)(2); and (B) Officer Monroe’s

expert testimony regarding the HGN test.

 -8-
 STATE V. FOWLER

 Opinion of the Court

A. Jury Instructions for Impaired Driving

 On appeal, Defendant contends the trial court erred by instructing the jury on

driving while impaired under N.C. Gen. Stat. § 20-138.1 (a)(2), which violated

Defendant’s constitutional right to an unanimous jury verdict. We address

Defendant’s contentions regarding the jury instructions together and agree the trial

court committed reversible error.

 N.C. Gen. Stat. § 20-138.1(a) states:,

 A person commits the offense of impaired driving if he
 drives any vehicle upon any highway, any street, or any
 public vehicular area within this State:

 (1) While under the influence of an impairing substance; or

 (2) After having consumed a sufficient alcohol that he has,
 at any relevant time after the driving, an alcohol
 concentration of 0.08 or more. The results of a chemical
 analysis shall be deemed sufficient evidence to prove a
 person’s alcohol concentration; or

 (3) With any amount of a Schedule I controlled substance,
 as listed in G.S. 90-89, or its metabolites in his blood or
 urine.

N.C. Gen. Stat. § 138.1(a).

 “Both the North Carolina Constitution and the North Carolina General

Statutes protect the right of the accused to be convicted only by a unanimous jury in

open court.” State v. Walters, 368 N.C. 749, ___, 782 S.E.2d 505, 507 (2016) (citing

N.C. Const. art. I, § 24; N.C. Gen. Stat. § 15A-1237(b)). “But it does not follow from

 -9-
 STATE V. FOWLER

 Opinion of the Court

these constitutional and statutory guarantees that every disjunctive jury instruction

violates one or both of those guarantees.” Id. at ___, 782 S.E.2d at 507.

 As explained by our Supreme Court:

 a disjunctive instruction, which allows the jury to find a
 defendant guilty if he commits either of two underlying
 acts, either which is in itself a separate offense, is fatally
 ambiguous because it is impossible to determine whether
 the jury unanimously found that the defendant committed
 one particular offense.

 …

 [I]f the trial court merely instructs the jury disjunctively
 as to various alternative acts which will establish an
 element of the offense, the requirement of unanimity is
 satisfied.

Id. at ___, 782 S.E.2d at 507-08 (internal quotation marks, citations, and emphases

omitted).

 This Court recently stated:

 North Carolina’s appellate courts have consistently held
 that “a trial judge should not give instructions to the jury
 which are not supported by the evidence produced at the
 trial.” State v. Cameron, 284 N.C. 165, 171, 200 S.E.2d 186,
 191 (1973) (citations omitted). That is because the purpose
 of jury instructions is “the clarification of issues, the
 elimination of extraneous matters, and a declaration and
 an application of the law arising on the evidence.” Id. An
 instruction related to a theory not supported by the
 evidence confuses the issues, introduces an extraneous
 matter, and does not declare the law applicable to the
 evidence.

 - 10 -
 STATE V. FOWLER

 Opinion of the Court

State v. Malachi, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___, COA16-752, 2017 WL

1381592, *2 (2017).

 Typically, disjunctive jury instructions for impaired driving are permissible.

State v. Oliver, 343 N.C. 202, 215, 470 S.E.2d 16, 24 (1996). When a disjunctive jury

instruction is permitted, the State must still present evidence to support both

theories. State v. Johnson, 183 N.C. App. 576, 582, 646 S.E.2d 123, 127 (2007). When

a disjunctive jury instruction is improperly given, it violates the Defendant’s right to

a unanimous jury, because it is impossible to determine upon what theory of the case

the jury decided. State v. Funchess, 141 N.C. App. 302, 308, 540 S.E.2d 435, 438-39

(2000) (citations omitted).

 Here, the State specifically requested the .08 instruction “just so [counsel

could] use it in [his] argument.” Defendant objected because “there was no evidence

to sort of an actual number of any blood alcohol level . . . .” The trial court overruled

Defendant’s objection and instructed the jury as follows, inter alia:

 The defendant has been charged with impaired
 driving. For you to find the defendant guilty of this offense
 the state must prove three things beyond a reasonable
 doubt:

 First, that the defendant was driving a vehicle.

 Second, that the defendant was driving that vehicle
 upon a highway or street within the state.

 And third, that the defendant was driving that
 vehicle, (1) that the defendant was under the influence of

 - 11 -
 STATE V. FOWLER

 Opinion of the Court

 an impairing substance. Alcohol is an impairing substance.
 The defendant is under the influence of an impairing
 substance when the defendant has consumed a sufficient
 quantity of that impairing substance to cause the
 defendant to lose the normal control of the defendant's
 bodily or mental faculties or both to such an extent that
 there is an appreciable impairment of either or both of
 these faculties, or (2) that the defendant had consumed
 sufficient alcohol that at any relevant time after driving
 the defendant had an alcohol concentration of 0.08 or more
 grams of alcohol per 210 liters of breath. A relevant time is
 any time after driving that the driver still has in the
 driver's body alcohol consumed before or during driving.
 If the evidence tends to show that a chemical test known
 as an Intoxilyzer was offered to the defendant by a law
 enforcement officer and that the defendant refused to take
 the test or that the defendant refused to perform a field
 sobriety test at the request of an officer, you may consider
 this evidence together with all other evidence in
 determining whether the defendant was under the
 influence of an impairing substance at the time that the
 defendant drove a motor vehicle.

 If you find from the evidence beyond a reasonable
 doubt that on or about the alleged date the defendant drove
 a vehicle on a highway or street in the state and that when
 doing so the defendant was under the influence of an
 impairing substance or that the defendant had consumed
 sufficient alcohol that at any relevant time after driving
 the defendant had an alcohol concentration of 0.08 or more
 grams of alcohol per 210 liters of the breath, it would be
 your duty to return a verdict of guilty. If you do not so find
 or have a reasonable doubt as to one or more of these
 things, it would be your duty to return a verdict of not
 guilty.

 Defendant argues the trial court erred in instructing the jury under N.C. Gen.

Stat. § 20-138.1 (a)(2), and such error is reversible error. The State concedes the trial

 - 12 -
 STATE V. FOWLER

 Opinion of the Court

court erred in its jury instructions. However, the State contends any error was

harmless error, and Defendant is not entitled to a new trial.

 We agree with both Defendant and State and hold the trial court erred in

instructing the jury under both N.C. Gen. Stat. § 20-138.1(a)(1) and (a)(2). Although

disjunctive jury instructions are generally permissible for impaired driving, in this

case, the State presented no evidence supporting the section 20-138.1(a)(2)

instruction. Compare Oliver, 343 N.C. at 215, 470 S.E.2d at 24, with Johnson, 183

N.C. App. at 582, 646 S.E.2d at 127. Defendant did not properly participate in the

Intoxilyzer test, and the State introduced no evidence of blood alcohol tests. As such,

the trial court improperly instructed the jury on alternate theories, one of which the

evidence did not support.

 It is impossible to conclude, based upon the record and general verdict form,

upon which theory the jury based its verdict. Our case law mandates our Court to

“assume the jury based its verdict on the theory for which it received an improper

instruction.” State v. Petersilie, 334 N.C. 169, 193, 432 S.E.2d 832, 846 (1993)

(citations omitted).

 Furthermore, cannot agree with the State that the error was harmless or non-

prejudicial. It is settled law this error entitles Defendant to a new trial. Under

controlling case law:

 [w]here the trial judge has submitted the case to the jury
 on alternative theories, one of which is determined to be

 - 13 -
 STATE V. FOWLER

 Opinion of the Court

 erroneous and the other properly submitted, and we cannot
 discern from the record the theory upon which the jury
 relied, this Court will not assume that the jury based its
 verdict on the theory for which it received a proper
 instruction. Instead, we resolve the ambiguity in favor of
 the defendant.

State v. Pakulski, 319 N.C. 562, 574, 356 S.E.2d 319, 326 (1987) (citation omitted).

See State v. Lynch, 327 N.C. 210, 219, 393 S.E.2d 811, 816 (1990) (holding such error

entitled defendant to a new trial); Malachi, ___ N.C. App. at ___, ___ S.E.2d at ___;

State v. Jefferies, ___ N.C. App. ___, ___, 776 S.E.2d 872, 880 (2015); Johnson, 183

N.C. App. at 585, 646 S.E.2d at 128; State v. Hughes, 114 N.C. App. 742, 746, 443

S.E.2d 76, 79 (1994); State v. O’Rourke, 114 N.C. App. 435, 442, 442 S.E.2d 137, 140

(1994) (citation omitted); State v. Dick, No. COA15-1400, 2016 WL 5746395

(unpublished) (N.C. Ct. App. Oct. 4, 2016). See also State v. Porter, 340 N.C. 320, 331,

457 S.E.2d 716, 721 (1995) (citation omitted) (“Where jury instructions are given

without supporting evidence, a new trial is required.”).

 Moreover, this is not a case where there is overwhelming evidence of

Defendant’s impaired driving. Before beginning the field sobriety tests, Defendant

told Officer Monroe he suffers from knee pain. During the tests, Defendant told

Officer Monroe he needed his knee pads to complete the tests. Officer Monroe

testified Defendant lost his balance However, Defendant neither fell during the tests,

nor did he stumble or try to lean upon anything for balance.

 - 14 -
 STATE V. FOWLER

 Opinion of the Court

 Accordingly, we vacate Defendant’s conviction for impaired driving and grant

him a new trial.

B. Expert Testimony

 Defendant also contends the trial court erred by allowing Officer Monroe to

testify as an expert in “the administration and interpretation” of the HGN test.

Although the issue of expert testimony for the HGN test needs to be resolved, the

record and arguments in this case are insufficient to address this issue. Because we

grant Defendant a new trial based on the trial court’s error in jury instructions, we

need not address this issue on appeal.

 IV. Conclusion

 For the foregoing reasons, we vacate Defendant’s conviction and grant him a

new trial.

 NEW TRIAL.

 Judge CALABRIA concurs.

 Judge BERGER concurring in a separate opinion.

 - 15 -
No. COA16-947 – State v. Fowler

 BERGER, Judge, concurring.

 I reluctantly concur in the result reached by this Court as I am compelled to

follow the law as it currently exists. “Where a panel of the Court of Appeals has

decided the same issue, albeit in a different case, a subsequent panel of the same

court is bound by that precedent, unless it has been overturned by a higher court.”

In re Civil Penalty, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). However, it seems

that, given the reasoning in recent opinions from our Supreme Court, harmless error

analysis should be undertaken.

 It is uncontroverted that, in the State’s case-in-chief for the driving while

impaired charge, there was no evidence presented at trial regarding Defendant’s

blood alcohol concentration, only evidence concerning an appreciable impairment

theory. The trial court conducted a charge conference at the conclusion of all the

evidence, and the record shows the court initially intended to instruct only on the

appreciable impairment theory. However, the State argued, as shown below, that

Defendant’s counsel intended to argue in closing that the State had failed to prove

Defendant’s blood alcohol concentration:

 THE COURT: I plan on giving . . . 270.20A, impaired
 driving. I will give the instructions on
 appreciable impairment as I assume that's
 the theory that the state is proceeding
 under.

 ...
 STATE V. FOWLER

 BERGER, J., Concurring

[THE STATE]: Your Honor, I would request the .08
 instruction just so I can use it in my
 argument.

THE COURT: All right.

[ATTORNEY FOR DEFENDANT]: As there was no
 evidence to sort of an actual number of any
 blood alcohol level, I would object to that
 instruction.

THE COURT: Well, if you argue they haven't shown .08
 I'm going to give that instruction or they
 haven't shown his blood alcohol content I
 will give that instruction because you can't
 have it both ways. You can't -- you can't
 object to the instruction and argue that
 they haven't shown his BAC because there
 are more than one way to prove the offense.

[ATTORNEY FOR DEFENDANT]: Well, my argument
 about the blood would be more along the
 line of not talking about any number at any
 point, just amount. If the blood came back
 and it was clear of all alcohol, there's no
 alcohol, there cannot possibly be an alcohol
 impairment. If there was only a minimal
 amount, .01 or .02, it couldn't be
 impairment.

THE COURT: Well, why agree with that because someone
 could have a .01 and .02 and still be
 impaired with that particular person. I
 mean, the only evidence is that there was
 consumption of alcohol. I mean, I will –

[THE STATE]: Your Honor, I'm almost confident [Attorney
 for Defendant]'s going to be arguing a
 portion of the blood test not being done and,
 you know, I mean, I think that that would

 2
 STATE V. FOWLER

 BERGER, J., Concurring

 allow us to at least have that instruction
 and then kind of explain why we don't have
 that in this case, so, I mean, I think it's
 appropriate to put it in there.

 THE COURT: I'll go ahead and give B. Anything further?
 And I note your objection.

 The trial court then instructed the jury consistent with the Pattern Jury

Instruction for Driving While Impaired, as follows:

 The defendant has been charged with impaired
 driving. For you to find the defendant guilty of this offense
 the state must prove three things beyond a reasonable
 doubt:

 First, that the defendant was driving a vehicle.

 Second, that the defendant was driving that vehicle
 upon a highway or street within the state.

 And third, that the defendant was driving that
 vehicle, (1) that the defendant was under the influence of
 an impairing substance. Alcohol is an impairing
 substance. The defendant is under the influence of an
 impairing substance when the defendant has consumed a
 sufficient quantity of that impairing substance to cause the
 defendant to lose the normal control of the defendant's
 bodily or mental faculties or both to such an extent that
 there is an appreciable impairment of either or both of
 these faculties, or (2) that the defendant had consumed
 sufficient alcohol that at any relevant time after driving
 the defendant had an alcohol concentration of 0.08 or more
 grams of alcohol per 210 liters of breath. A relevant time
 is any time after driving that the driver still has in the
 driver's body alcohol consumed before or during driving.

 If the evidence tends to show that a chemical test
 known as an Intoxilyzer was offered to the defendant by a
 law enforcement officer and that the defendant refused to

 3
 STATE V. FOWLER

 BERGER, J., Concurring

 take the test or that the defendant refused to perform a
 field sobriety test at the request of an officer, you may
 consider this evidence together with all other evidence in
 determining whether the defendant was under the
 influence of an impairing substance at the time that the
 defendant drove a motor vehicle.

 If you find from the evidence beyond a reasonable
 doubt that on or about the alleged date the defendant drove
 a vehicle on a highway or street in the state and that when
 doing so the defendant was under the influence of an
 impairing substance or that the defendant had consumed
 sufficient alcohol that at any relevant time after driving
 the defendant had an alcohol concentration of 0.08 or more
 grams of alcohol per 210 liters of the breath, it would be
 your duty to return a verdict of guilty. If you do not so find
 or have a reasonable doubt as to one or more of these
 things, it would be your duty to return a verdict of not
 guilty.

 The trial court erred in giving the instructions regarding .08 blood alcohol

concentration, where it should have only instructed the jury on appreciable

impairment. A disjunctive instruction is erroneous if there is no “evidence to support

all of the alternative acts that will satisfy the element.” State v. Johnson, 183 N.C.

App. 576, 582, 646 S.E.2d 123, 127 (2007). The North Carolina Supreme Court held

in State v. Pakulski that:

 Where the trial judge has submitted the case to the jury on
 alternative theories, one of which is determined to be
 erroneous and the other properly submitted, and we cannot
 discern from the record the theory upon which the jury
 relied, this Court will not assume that the jury based its
 verdict on the theory for which it received a proper
 instruction. Instead, we resolve the ambiguity in favor of
 the defendant.

 4
 STATE V. FOWLER

 BERGER, J., Concurring

State v. Pakulski, 319 N.C. 562, 574, 356 S.E.2d 319, 326 (1987). See also State v.

Petersilie, 334 N.C. 169, 193, 432 S.E.2d 832, 846 (1993) (“[W]e must assume the jury

based its verdict on the theory for which it received an improper instruction.”

(citations omitted)); State v. Lynch, 327 N.C. 210, 393 S.E.2d 811 (1990); State v.

Johnson, 183 N.C. App. 576, 646 S.E.2d 123 (2007); State v. Hughes, 114 N.C. App.

742, 746, 443 S.E.2d 76, 79 (1994) (“We are required, we believe, to order a new trial

. . . .”), disc. review denied, 337 N.C. 697, 448 S.E.2d 536 (1994); State v. Dick, ___

N.C. App. ___, 791 S.E.2d 873 (2016) (unpublished); State v. Malachi, ___ N.C. App.

___, ___ S.E.2d ___, COA16-752, 2017 WL 1381592 (2017). These cases set forth a

per se plain error rule requiring a new trial when a disjunctive instruction is given

and there is no evidence to support each of the theories submitted to the jury.

 However, the North Carolina Supreme Court appears to be shifting away from

this per se plain error rule for disjunctive jury instructions. In State v. Lawrence, 365

N.C. 506, 723 S.E.2d 326 (2012), that Court reaffirmed and clarified that “the plain

error standard of review applies on appeal to unpreserved instructional” errors in the

context of jury instructions. Lawrence, at 518, 723 S.E.2d at 334. The Supreme Court

also noted that N.C. Gen. Stat. § 15A-1443 differentiated the harmless error standard

of review, which applies only to preserved errors.

 [H]armless error review functions the same way in both
 federal and state courts: Before a federal constitutional
 error can be held harmless, the court must be able to
 declare a belief that it was harmless beyond a reasonable

 5
 STATE V. FOWLER

 BERGER, J., Concurring

 doubt. . . . [A]n error . . . [is] harmless if the jury verdict
 would have been the same absent the error. Under both
 the federal and state harmless error standards, the
 government bears the burden of showing that no prejudice
 resulted from the challenged federal constitutional error.
 But if the error relates to a right not arising under the
 United States Constitution, North Carolina harmless error
 review requires the defendant to bear the burden of
 showing prejudice. In such cases the defendant must show
 a reasonable possibility that, had the error in question not
 been committed, a different result would have been
 reached at the trial out of which the appeal arises.

Lawrence, at 513, 723 S.E.2d at 331 (internal citations, quotation marks, and

brackets omitted).

 In State v. Boyd, 366 N.C. 548, 742 S.E.2d 798 (2013), our Supreme Court, after

directing this Court to follow the analysis in Lawrence, adopted a dissent from the

Court of Appeals which applied plain error review to an unpreserved error concerning

a jury instruction for which there was no evidence. See State v. Boyd, 222 N.C. App.

160, 730 S.E.2d 193 (2012) (Stroud, J., dissenting), dissent adopted by 366 N.C. 548,

742 S.E.2d 798 (2013).

 More recently, the Supreme Court remanded to this Court the case of State v.

Martinez, in which the trial court erred when it instructed the jury in a sexual offense

case on a theory not supported by the evidence offered at trial. State v. Martinez, ___

N.C. App. ___, 795 S.E.2d 433 (2016) (unpublished), writ dismissed, ___ N.C. ___, 797

S.E.2d 5 (2017). Initially, this Court held that “there was an ambiguity as to which

sexual act the jury found Defendant had committed, and therefore [we] ‘must resolve

 6
 STATE V. FOWLER

 BERGER, J., Concurring

this ambiguity in favor of Defendant.’ ” Id. at ___ (quoting State v. Pakulski, 319 N.C.

at 574, 356 S.E.2d at 326) (brackets omitted). Our Supreme Court remanded the

case, directing us to determine whether or not the trial court’s instructions in that

matter amounted to plain error as set forth in Boyd.

 However, in the case sub judice, the error under review was preserved, as

Defendant’s counsel objected to the instruction. For preserved error, harmless error

analysis should be applied pursuant to the plain language of N.C. Gen. Stat. § 15A-

1443 and as discussed in Lawrence. But, this is not the current state of the law.

Even so, the majority engages in a harmless error analysis when it states, “this is not

a case where there is overwhelming evidence of Defendant’s impaired driving” and

then discusses the facts it believes supports that conclusion.

 Were we to engage in a harmless error analysis, which under current case law

we cannot do, I believe a different conclusion would be required. The evidence in the

record tended to show that Defendant drove his truck into the path of Officer

Monroe’s motorcycle. In order to avoid a collision with Defendant’s vehicle, Officer

Monroe was forced to “lock the bike up and then immediately make an evasive

maneuver” and abruptly shift lanes. Officer Monroe initiated a traffic stop, and

observed that Defendant had red, glassy eyes, spoke with slurred speech, and had a

medium odor of alcohol on his breath. When asked why he pulled out into the path

of the officer’s motorcycle, Defendant said the officer had enough room and that he

 7
 STATE V. FOWLER

 BERGER, J., Concurring

“was catching [the officer’s] curiosity.” Officer Monroe then asked Defendant if he

had consumed any alcohol prior to driving that evening, and Defendant responded

that “he had one to two drinks” of Jägermeister. Defendant was asked to exit the

vehicle to perform field sobriety tests.

 Defendant was visibly swaying and unable to keep his balance while the officer

was providing instructions for the walk-and-turn test. Defendant also began the test

before being instructed to do so on two occasions. At this point, Defendant told Officer

Monroe “that he can’t do the test, he’s not going to do the test.”

 Officer Monroe then attempted to have Defendant perform the one-legged

stand test. Defendant again was visibly swaying and unable to perform the test as

instructed. When Officer Monroe offered to demonstrate the test again, Defendant

indicated he did not want to perform the test.

 After he was arrested for driving while impaired, Defendant was taken to the

Raleigh Police Department. There, Officer Monroe attempted to administer a blood

alcohol test on the ECIR-2 (“Intoxilyzer”). Defendant took a breath and blew into the

instrument to provide a sample. Defendant was performing this test as instructed,

but then he stopped and indicated he was not going to continue with the test.

Defendant’s failure to complete the Intoxilyzer test resulted in a refusal. No blood

test was performed, and no numerical value was ever obtained for Defendant’s blood

alcohol concentration for this incident.

 8
 STATE V. FOWLER

 BERGER, J., Concurring

 It was this evidence upon which the jury deliberated and convicted Defendant.

The jury heard no evidence regarding a numerical finding of Defendant’s blood

alcohol concentration, yet we are required to assume the jury’s verdict was based

upon a finding that Defendant’s blood alcohol concentration was .08 or higher. See

State v. Petersilie, 334 N.C. 169, 193, 432 S.E.2d 832, 846 (1993) (citation omitted)

(“[W]e must assume the jury based its verdict on the theory for which it received an

improper instruction.” (citations omitted)).

 Jurors are instructed prior to every trial that they should “use the same good

judgment and common sense that you use[ ] in handling your own affairs . . . .”

N.C.P.I.--Crim. 100.21 (2015). In reviewing the entire record in this case, one could

reasonably conclude that, because there was no evidence of impaired driving under

N.C. Gen. Stat. § 20-138.1(a)(2), the jurors did as they were instructed: they used

their “good judgment and common sense,” and relied upon the appreciable

impairment theory.

 Concluding the harmless error analysis, it cannot be said that a different result

would have been reached in this case had the error in question not been committed.

Defendant failed to establish that there was a reasonable possibility that the .08

instruction contributed to his conviction given the evidence of appreciable

impairment. I would find the erroneous instruction harmless beyond a reasonable

doubt.

 9
 STATE V. FOWLER

 BERGER, J., Concurring

 While this may be the analysis the North Carolina Supreme Court would

prefer us to utilize given the plain language of N.C. Gen. Stat. § 15A-1443 and a

broader reading of Lawrence, Boyd, and Martinez, this Court must apply the law as

it is. If the North Carolina Supreme Court is, in fact, changing the standard of review

we are to apply to disjunctive instructions given in error, straightforward direction

from that higher court would be beneficial.

 10