IN THE SUPREME COURT OF NORTH CAROLINA

No. 344PA14

Filed 18 March 2016

STATE OF NORTH CAROLINA

v.

GARY MAURICE WALTERS


On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, ___ N.C. App. ___, 765 S.E.2d 122 (2014), finding no error in part in judgments entered on 28 June 2013 by Judge William R. Pittman in Superior Court, Robeson County, but vacating defendant's conviction for first-degree kidnapping and ordering a new trial on that charge. Heard in the Supreme Court on 17 February 2016.

*Roy Cooper, Attorney General, by Mary Carla Babb, Assistant Attorney General, for the State-appellant.*

*Paul F. Herzog for defendant-appellee.*

HUDSON, Justice.


Defendant Gary Maurice Walters was convicted on 28 June 2013 of first-degree kidnapping, attempted first-degree murder, and assault with a deadly weapon with intent to kill inflicting serious injury. On appeal, the Court of Appeals vacated defendant's conviction for first-degree kidnapping on the basis that the trial court had given "a disjunctive instruction concerning the purpose for which [d]efendant

acted that lacked adequate evidentiary support," which, the Court of Appeals concluded, effectively allowed defendant to be convicted based on a non-unanimous jury verdict. *State v. Walters*, ___ N.C. App. ___, 765 S.E.2d 122, 2014 WL 4292074, at *9 (2014) (unpublished). We allowed the State's petition for discretionary review on 5 November 2015. Because we now conclude that the trial court's disjunctive jury instruction did not violate defendant's constitutional right to be convicted only by the unanimous verdict of a jury in open court, *see* N.C. Const. art. I, § 24, we reverse in part the decision of the Court of Appeals.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the evening of 17 August 2005, Paul Franklin began a two-day period of repeatedly buying and using cocaine, during which he was introduced to, and purchased cocaine from, defendant. After Franklin ran out of money while staying at the Redwood Inn in Lumberton, North Carolina, he allowed defendant to use his vehicle, a gray Ford Windstar van, in exchange for more cocaine. This arrangement continued through the next day, with defendant bringing Franklin cocaine every few hours in exchange for the continued use of the van.

Early in the morning of 19 August 2005, at approximately 3:30 a.m., Franklin's paycheck was deposited into his bank account, and defendant drove him in the van to an ATM to withdraw money. After Franklin made the withdrawal, defendant offered to bring Franklin "a third of cocaine" in exchange for the one hundred dollars Franklin had available to spend. However, when defendant arrived back at the

Redwood Inn with the cocaine, Franklin believed it to be worth less than the full amount he had offered to pay; he offered defendant seventy-five dollars instead. In response, defendant reached down and broke off the leg of a table in the hotel room, then used the table leg to beat Franklin.

A short time later, at approximately 5:30 or 6:00 a.m., defendant arrived at the home of Christopher Bass and Shelly Scott. At defendant's request, Bass used Scott's Honda Civic to follow defendant while defendant drove Franklin's Windstar. They eventually parked near a river, and defendant told Bass that he had a man in the van. Defendant opened the door to show him Franklin in the back seat. According to Bass, Franklin's face "was mangled and beat up, and it sounded like he was breathing heavy." Defendant told Bass that the injuries were the product of a "tussle" stemming from "a drug deal gone wrong" at the Redwood Inn. Bass answered in the negative when defendant asked him if he should kill Franklin. Defendant left the van at the scene and Bass used the Civic to drive defendant back to defendant's mother's house.

The injuries Franklin endured were severe. As a result of the beating, every bone in Franklin's face was broken; he suffered optic nerve damage, which caused him to have blind spots; and his eye socket was so badly damaged that doctors could not correctly realign his eyes, which resulted in double vision. He suffered such extensive facial scarring that he "went a year with no nose." When doctors attempted reconstructive surgery, an antibiotic-resistant staph infection prevented them from

completing it successfully. As a result of the damage to his vision, Franklin could no longer continue his employment as a truck driver.

On 8 May 2006, defendant was indicted in Robeson County for first-degree kidnapping, attempted first-degree murder, and assault with a deadly weapon with intent to kill inflicting serious injury. The charges against defendant were called for trial on 24 June 2013, and a jury was selected and impaneled the next day. The State presented evidence from 26 June through 28 June; defendant presented evidence on 28 June. Also on 28 June 2013, the trial court instructed the jury regarding the offenses with which defendant had been charged: attempted first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, and first-degree kidnapping. Regarding the elements of first-degree kidnapping, the trial court instructed as follows:

> The defendant has been charged with first degree kidnapping. For you to find the defendant guilty of this offense, the State must prove five things beyond a reasonable doubt: First, that the defendant unlawfully removed a person from one place to another; second, that the person did not consent; third, that the defendant removed that person for the purpose of facilitating his commission of or flight after committing the felony of assault with a deadly weapon with intent to kill inflicting serious injury; fourth, that this removal was a separate, complete act, independent of and apart from the assault; and fifth, that the person was not released by the defendant in a safe place or had been seriously injured.

Later that day, the jury returned verdicts convicting defendant of all three offenses.

Defendant entered a written notice of appeal to the Court of Appeals on 5 July 2013.

At the Court of Appeals, defendant argued, *inter alia*, that he had been denied his right to a unanimous jury verdict regarding the first-degree kidnapping charge; defendant took particular issue with the instruction allowing the jury to convict him of first-degree kidnapping if it found beyond a reasonable doubt that he had committed the kidnapping "for the purpose of facilitating the commission of or flight following the commission of a felony." Applying its precedent in *State v. Johnson*, 183 N.C. App. 576, 646 S.E.2d 123 (2007), the Court of Appeals agreed, concluding that the challenged instruction would have allowed one or more jurors to convict defendant based on a theory not supported by the evidence, namely, that defendant had committed the kidnapping to facilitate the assault of Franklin rather than a subsequent escape. *See Walters*, 2014 WL 4292074, at *8-9. The Court of Appeals therefore ordered a new trial on the charged offense of first-degree kidnapping. *Id.* at *9. The State filed a petition for discretionary review, which we allowed on 5 November 2015.

## II. ANALYSIS

Defendant contends to this Court, as he did to the Court of Appeals, that the trial court's "disjunctive" instruction to the jury regarding the charge of first-degree kidnapping allowed the jury to convict him through a non-unanimous verdict. Defendant argues in essence that the relevant instruction—that to convict, the jury must find that defendant "removed [Franklin] for the purpose of facilitating *the commission of **or** flight following* the commission of a felony" (emphases added)—

allowed each individual juror to vote to convict on either basis. As a result, this argument continues, some jurors obeying this instruction may have found as fact that defendant kidnapped Franklin "to facilitate the commission of" the assault or attempted murder, but not the flight afterward, while others may have found that defendant kidnapped Franklin "to facilitate . . . flight following the commission of" the assault or attempted murder, but not the assault or attempted murder itself. In that event, there would be no unanimously agreed-upon basis for the conviction, in seeming violation of the unanimity requirement.

Because this argument has previously been considered and rejected by this Court, we now reverse in part the decision of the Court of Appeals. *See State v. Bell*, 359 N.C. 1, 29-30, 603 S.E.2d 93, 112-13 (2004), *cert. denied*, 544 U.S. 1052 (2005). Both the North Carolina Constitution and the North Carolina General Statutes protect the right of the accused to be convicted only by a unanimous jury in open court. *See* N.C. Const. art. I, § 24 ("No person shall be convicted of any crime but by the unanimous verdict of a jury in open court . . . .");[1] N.C.G.S. § 15A-1237(b) (2015)

---

[1] This provision of the constitution was amended in 2014 and now states in full:
> No person shall be convicted of any crime but by the unanimous verdict of a jury in open court, except that a person accused of any criminal offense for which the State is not seeking a sentence of death in superior court may, in writing or on the record in the court and with the consent of the trial judge, waive jury trial, subject to procedures prescribed by the General Assembly. The General Assembly may, however, provide for other means of trial for misdemeanors, with the right of appeal for trial de novo.

N.C. Const. art. I, § 24.

(requiring that a jury verdict "be unanimous, and . . . be returned by the jury in open court"). But it does not follow from these constitutional and statutory guarantees that every disjunctive jury instruction violates one or both of those guarantees. Rather, as we explained in *Bell*, which the Court of Appeals did not mention even though that case also concerned a jury instruction for first-degree kidnapping, our case law has long embraced a distinction between unconstitutionally vague instructions that render unclear the offense for which the defendant is being convicted and instructions which instead permissibly state that more than one specific act can establish an element of a criminal offense. *See* 359 N.C. at 29-30, 603 S.E.2d at 112-13. As we explained in *Bell*:

> Two lines of cases have developed regarding the use of disjunctive jury instructions. *State v. Diaz* [317 N.C. 545, 346 S.E.2d 488 (1986), and its progeny] stand[ ] for the proposition that "a disjunctive instruction, which allows the jury to find a defendant guilty if he commits either of two underlying acts, *either of which is in itself a separate offense*, is fatally ambiguous because it is impossible to determine whether the jury unanimously found that the defendant committed one particular offense." In such cases, the focus is on the conduct of the defendant.
>
> In contrast, this Court has recognized a second line of cases [stemming from *State v. Hartness*, 326 N.C. 561, 391 S.E.2d 177 (1990), ] standing for the proposition that "if the trial court merely instructs the jury disjunctively as to various alternative acts *which will establish an element of the offense*, the requirement of unanimity is satisfied." In this type of case, the focus is on the intent or purpose of the defendant instead of his conduct.

*Id.* at 29-30, 603 S.E.2d at 112-13 (emphases in original) (internal citations omitted) (quoting *State v. Lyons*, 330 N.C. 298, 302-03, 412 S.E.2d 308, 312 (1991)).

This case falls within the second category of cases described in *Bell*. There, as here, the defendant was charged with first-degree kidnapping; there, as here, the trial court instructed the jury that it could convict the defendant only if it found beyond a reasonable doubt that the defendant had committed one or more specific acts, any of which could establish an essential element of the offense; and there, as here, the defendant argued that the trial court's "disjunctive" instruction violated his right under the North Carolina Constitution to be convicted only through a unanimous jury verdict. In that virtually identical context, this Court held that the trial court's disjunctive instruction did not deprive the defendant of this right. *See id.* at 29, 603 S.E.2d at 112 ("The trial court instructed the jury as to first-degree kidnapping, in accord with the pattern jury instructions . . . . Defendant contends that the trial court's disjunctive instructions were fatally ambiguous because the jury could have convicted defendant without a unanimous decision that defendant confined, restrained, or removed the victim for the purpose of committing a specific crime. We disagree."). We then went on to explain:

> It is not necessary for the State to prove, nor for the jury to find, that a defendant committed a particular act other than that of confining, restraining, or removing the victim. Beyond that, a defendant's intent or purpose is the focus, thus placing the case *sub judice* squarely within the *Hartness* line of cases. The trial court's instructions and the verdict form were proper.

*Id.* at 30, 603 S.E.2d at 113. Accordingly, consistent with our previous opinion in *Bell*, we now reverse in part the decision of the Court of Appeals.[2]

## III. CONCLUSION

For the reasons set forth above, we reverse the Court of Appeals' holding that defendant is entitled to a new trial for the first-degree kidnapping charge. We do not address, and leave undisturbed, the Court of Appeals' conclusions regarding the convictions for attempted first-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury.

REVERSED IN PART.

Justice ERVIN did not participate in the consideration or decision of this case.

---

[2] We also note, despite the Court of Appeals' conclusion to the contrary, *see Walters*, 2014 WL 4292074, at *8-9, that the State's evidence, when viewed in the light most favorable to the State, was sufficient to support a finding by the jury that defendant had kidnapped Franklin in order to facilitate defendant's assault of Franklin with the intent to kill inflicting serious injury. As reviewed above, the State's evidence tended to show that, after beating Franklin with a table leg, defendant loaded Franklin into the Windstar, drove that Windstar to an isolated location near a river, and asked Christopher Bass whether he ought to kill Franklin. Because this testimony tends to show that defendant still may have intended to kill Franklin even after the beating was over and he had removed Franklin from the Redwood Inn, it appears that the State presented sufficient evidence to support a reasonable inference that defendant moved Franklin to "facilitate[ ] his commission of . . . the felony of assault with a deadly weapon with intent to kill inflicting serious injury." *Cf. State v. Kyle*, 333 N.C. 687, 695, 430 S.E.2d 412, 416 (1993) ("[T]he fact that all [the] essential elements of a crime have arisen does not mean the crime is no longer being committed. That the crime was 'complete' does not mean it was completed." (citation omitted) (quoting *State v. Hall*, 305 N.C. 77, 82-83, 286 S.E.2d 552, 555-56 (1982), *overruled on other grounds by Diaz*, 317 N.C. at 555, 346 S.E.2d at 495)). Accordingly, it appears that the State's evidence was sufficient to support either portion of the trial court's disjunctive jury instruction.