HUNTER, JR., Robert N., Judge.
*547 Melvin Leroy Fowler ("Defendant") appeals a jury verdict convicting him of driving while impaired ("DWI"). On appeal, Defendant contends the trial court erred by: (1) instructing the jury on a theory of impaired driving unsupported by the evidence, thus violating Defendant's constitutional right to a *726 unanimous jury verdict; and (2) allowing Officer Monroe to testify as an expert witness regarding the horizontal gaze Nystagmus ("HGN") test. For the following reasons, we grant Defendant a new trial.
I. Factual and Procedural Background
On 19 June 2014, Officer R. P. Monroe of the Raleigh Police Department ("RPD") stopped Defendant and arrested him for DWI. On *548 24 February 2015, Wake County District Court Judge James R. Fullwood found Defendant guilty of DWI. Defendant appealed to superior court for a jury trial, pursuant to N.C. Gen. Stat. § 15A-1431 (2016).
On 1 March 2016, the trial court called Defendant's case for trial. The evidence at trial tended to show the following.
The State first called Officer Monroe. On Thursday, 19 July 2014, Officer Monroe worked the night shift for the RPD. Aware the Wake County Sheriff's Office set up a checkpoint on Gorman Street, Officer Monroe visited the checkpoint to see if he could assist.
Officer Monroe rode down Avent Ferry Road on his motorcycle. When he was less than a half a mile from Gorman Street, he came to a point where Crest Road T-intersects with Avent Ferry Road. Officer Monroe saw Defendant's truck on Crest Road. Defendant pulled out in front of Officer Monroe's motorcycle. Officer Monroe "lock[ed] the bike up"[1] , "ma[d]e an evasive maneuver", and "dip[ped]" into the right lane to avoid hitting Defendant's truck. Officer Monroe's motorcycle and Defendant's truck came within "maybe two or three feet" of each other. Officer Monroe activated his blue lights and stopped Defendant for unsafe movement. Defendant stopped his truck at a stop sign at the intersection of Avent Ferry Road and Champion Court.
Officer Monroe introduced himself and explained he stopped Defendant because Defendant almost ran into his motorcycle. Officer Monroe saw Defendant's red, glassy eyes. He smelled a "medium" odor of alcohol on Defendant's breath. Defendant spoke with slurred speech. Officer Monroe asked Defendant why he pulled out in front of his motorcycle. Defendant remarked Officer Monroe had enough room and he "was catching [Officer Monroe's] curiosity."
Officer Monroe asked Defendant if he drank any alcohol that night. Defendant responded "one to two" servings of Jägermeister, and he was only driving a short distance. Officer Monroe asked Defendant to get out of his truck to participate in a series of field sobriety tests. Defendant agreed.
Officer Monroe conducted three field sobriety tests: HGN, walk-and-turn, and one-leg stand. Officer Monroe first conducted the HGN test. Officer Monroe turned Defendant away from traffic, so passing *549 headlights did not affect Defendant's eyes. He directed Defendant to stand facing him, with his feet together and hands to the side. Officer Monroe elevated Defendant's head slightly and held his finger in front of Defendant. He informed Defendant he was going to move his finger from left to right and instructed Defendant to follow his finger with Defendant's eyes. Defendant stated he understood the instructions, and Officer Monroe started the test. During the test, Defendant displayed a lack of "smooth pursuit" in both eyes, which Officer Monroe considered "two clues." Defendant ultimately displayed six out of six possible clues, three in each eye. Based on this test and the odor of alcohol, Officer Monroe concluded Defendant "had an impairing amount of alcohol in his system."
Officer Monroe also conducted two "divided attention" tests. The first test is the walk-and-turn. Officer Monroe instructed Defendant to place his left foot in front, with both hands to his sides, and move his right foot heel-to-toe. Officer Monroe told Defendant to stay in the heel-to-toe position while he gave Defendant further instructions. Officer Monroe next instructed Defendant to take nine heel-to-toe steps while keeping his hands at his sides, and counting out loud.
Defendant failed to follow instructions. Defendant swayed and stepped out of the starting stance. Officer Monroe instructed Defendant to return to the starting stance.
*727 Defendant then started the test too soon, stepped out of position, and lost his balance. Officer Monroe again instructed Defendant to stand in the starting position, but Defendant stepped out. The third time Officer Monroe instructed Defendant to get back in starting position, Defendant told Officer Monroe he could not do the test. Defendant then told Officer Monroe he was not going to do the test without his kneepads. Officer Monroe concluded the test.
Officer Monroe asked Defendant if he was willing to do the one-leg stand test. Defendant agreed. Officer Monroe instructed Defendant to keep his feet together, put his hands to his side, and stay in that position. Defendant was then to lift one foot with his toes pointed to the ground, and keep his foot parallel with the ground. While looking at his foot, Defendant would count to three. Next, Defendant should put his foot down and repeat the lift, as he continued counting from where he left off.
Defendant swayed when Officer Monroe started the test. Defendant also failed to follow the instructions. Defendant "barely got his foot off the ground" and failed to look down at his toes. When Officer Monroe instructed Defendant to lift his foot six inches off the ground, Defendant told Officer Monroe he did not know how much six inches was. Officer *550 Monroe offered to demonstrate the test again. Defendant said he no longer wanted to do the test.
Officer Monroe told Defendant he would like to take a preliminary sample of Defendant's breath. He explained this test was not admissible in court, but rather just a test for positive or negative of alcohol. Defendant refused.
Officer Monroe arrested Defendant for DWI. After booking Defendant, Officer Monroe brought Defendant into the DWI testing room. He presented Defendant with a form for implied consent. Officer Monroe read Defendant his rights. Defendant signed the form, acknowledging he understood his rights. Defendant then placed a call. Officer Monroe did not know if Defendant called someone to observe the administration of tests.
Thirty minutes later, Officer Monroe administered the Intoxilyzer test. Officer Monroe instructed Defendant on how to correctly blow into the breathalyzer. However, Defendant stopped blowing air into the instrument before Officer Monroe told him to stop. The instrument "shut[ ] down" and displayed "insufficient sample." Officer Monroe again instructed Defendant on how to correctly blow into the instrument. Defendant said he had cancer, which prevented him from properly blowing into the instrument. Defendant then told Officer Monroe he was not going to blow into the instrument. Officer Monroe explained to Defendant his breathing was sufficient, but Defendant prematurely stopped blowing. Officer Monroe told Defendant if Defendant did not blow into the instrument, he was "going to refuse him." "Refusing" constitutes pressing the refusal button on the instrument, which indicates Defendant's "willful refusal not to provide a breath sample on the instrument for the purposes of a DWI investigation."
The State rested, and Defendant moved to dismiss the case. The trial court denied Defendant's motion to dismiss. Defendant did not present any evidence. Defendant renewed his motion to dismiss, and the trial court denied Defendant's motion.
When discussing jury instructions, the State requested "the .08 instruction." Defendant objected to the .08 instruction, because "there was no evidence to [any] sort of an actual number of any blood alcohol level...." The trial court decided it would use the .08 instruction and reasoned:
Well, if you argue they haven't shown .08 I'm going to give that instruction or they haven't shown his blood alcohol content I will give that instruction because you can't have *551 it both ways. You can't-you can't object to the instruction and argue that they haven't shown his [blood alcohol content] because there [is] more than one way to prove the offense.
The jury found Defendant guilty of driving while impaired. Defendant admitted to the existence of two driving while impaired convictions. Defendant admitted to the aggravating fact of driving while license revoked due to a DWI conviction. The trial court sentenced Defendant as an Aggravated Level One offender and sentenced him to 24 *728 months imprisonment. Defendant gave timely oral notice of appeal.
II. Standard of Review
Challenges to the trial court's "decisions regarding jury instructions are reviewed de novo by this Court." State v. Osorio , 196 N.C.App. 458, 466, 675 S.E.2d 144, 149 (2009) (citations omitted). In a de novo review, this Court "considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." State v. Williams , 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (internal quotation marks and citation omitted).
"It is well settled that de novo review is ordinarily appropriate in cases where constitutional rights are implicated." Piedmont Triad Reg'l Water Auth. v. Sumner Hills, Inc. , 353 N.C. 343, 348, 543 S.E.2d 844, 848 (2001) (citations omitted). If an error is preserved for review, but does not arise under the Constitution of the United States, we review for prejudicial error. N.C. Gen. Stat. § 15A-1443(a) (2016).
Lastly, in regards to Officer Monroe's expert opinion testimony, the trial court's ruling on expert testimony under Rule 702 is typically reviewed for abuse of discretion. State v. McGrady , 368 N.C. 880, 893, 787 S.E.2d 1, 11 (2016) (citation omitted). "And 'a trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision.' " Id. at 893, 787 S.E.2d at 11 (quoting State v. Riddick , 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986) ). However, "[w]here the [defendant] contends the trial court's decision is based on an incorrect reading and interpretation of the rule governing admissibility of expert testimony, the standard of review on appeal is de novo ." State v. Torrence , --- N.C.App. ----, ----, 786 S.E.2d 40, 41 (2016) (quotation marks and citations omitted).
*552 III. Analysis
We review Defendant's contentions in two parts: (A) jury instructions for impaired driving under N.C. Gen. Stat. § 20-138.1 (a)(2) ; and (B) Officer Monroe's expert testimony regarding the HGN test.
A. Jury Instructions for Impaired Driving
On appeal, Defendant contends the trial court erred by instructing the jury on driving while impaired under N.C. Gen. Stat. § 20-138.1 (a)(2), which violated Defendant's constitutional right to an unanimous jury verdict. We address Defendant's contentions regarding the jury instructions together and agree the trial court committed reversible error.
N.C. Gen. Stat. § 20-138.1(a) states:,
A person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State:
(1) While under the influence of an impairing substance; or
(2) After having consumed a sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more. The results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration; or
(3) With any amount of a Schedule I controlled substance, as listed in G.S. 90-89, or its metabolites in his blood or urine.
N.C. Gen. Stat. § 138.1(a).
"Both the North Carolina Constitution and the North Carolina General Statutes protect the right of the accused to be convicted only by a unanimous jury in open court." State v. Walters , 368 N.C. 749, 752, 782 S.E.2d 505, 507 (2016) (citing N.C. Const. art. I, § 24 ; N.C. Gen. Stat. § 15A-1237(b) ). "But it does not follow from these constitutional and statutory guarantees that every disjunctive jury instruction violates one or both of those guarantees." Id. at 753, 782 S.E.2d at 507.
As explained by our Supreme Court:
a disjunctive instruction, which allows the jury to find a defendant guilty if he commits either of two underlying acts, either which is in itself a separate offense, is fatally *553 ambiguous because it is impossible to determine whether the jury unanimously found that the defendant committed one particular offense.
...
*729 [I]f the trial court merely instructs the jury disjunctively as to various alternative acts which will establish an element of the offense, the requirement of unanimity is satisfied.
Id. at 753, 782 S.E.2d at 507-08 (internal quotation marks, citations, and emphases omitted).
This Court recently stated:
North Carolina's appellate courts have consistently held that "a trial judge should not give instructions to the jury which are not supported by the evidence produced at the trial." State v. Cameron , 284 N.C. 165, 171, 200 S.E.2d 186, 191 (1973) (citations omitted). That is because the purpose of jury instructions is "the clarification of issues, the elimination of extraneous matters, and a declaration and an application of the law arising on the evidence." Id. An instruction related to a theory not supported by the evidence confuses the issues, introduces an extraneous matter, and does not declare the law applicable to the evidence.
State v. Malachi , --- N.C.App. ----, ----, 799 S.E.2d 645, 648, COA16-752, 2017 WL 1381592, *2 (2017).
Typically, disjunctive jury instructions for impaired driving are permissible. State v. Oliver , 343 N.C. 202, 215, 470 S.E.2d 16, 24 (1996). When a disjunctive jury instruction is permitted, the State must still present evidence to support both theories. State v. Johnson , 183 N.C.App. 576, 582, 646 S.E.2d 123, 127 (2007). When a disjunctive jury instruction is improperly given, it violates the Defendant's right to a unanimous jury, because it is impossible to determine upon what theory of the case the jury decided. State v. Funchess , 141 N.C.App. 302, 308, 540 S.E.2d 435, 438-39 (2000) (citations omitted).
Here, the State specifically requested the .08 instruction "just so [counsel could] use it in [his] argument." Defendant objected because "there was no evidence to sort of an actual number of any blood alcohol level...." The trial court overruled Defendant's objection and instructed the jury as follows, inter alia :
*554 The defendant has been charged with impaired driving. For you to find the defendant guilty of this offense the state must prove three things beyond a reasonable doubt:
First, that the defendant was driving a vehicle.
Second, that the defendant was driving that vehicle upon a highway or street within the state.
And third, that the defendant was driving that vehicle, (1) that the defendant was under the influence of an impairing substance. Alcohol is an impairing substance. The defendant is under the influence of an impairing substance when the defendant has consumed a sufficient quantity of that impairing substance to cause the defendant to lose the normal control of the defendant's bodily or mental faculties or both to such an extent that there is an appreciable impairment of either or both of these faculties, or (2) that the defendant had consumed sufficient alcohol that at any relevant time after driving the defendant had an alcohol concentration of 0.08 or more grams of alcohol per 210 liters of breath. A relevant time is any time after driving that the driver still has in the driver's body alcohol consumed before or during driving. If the evidence tends to show that a chemical test known as an Intoxilyzer was offered to the defendant by a law enforcement officer and that the defendant refused to take the test or that the defendant refused to perform a field sobriety test at the request of an officer, you may consider this evidence together with all other evidence in determining whether the defendant was under the influence of an impairing substance at the time that the defendant drove a motor vehicle.
If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant drove a vehicle on a highway or street in the state and that when doing so the defendant was under the influence of an impairing substance or that the defendant had consumed sufficient alcohol that at any relevant time after driving the defendant had an alcohol concentration of 0.08 or more grams of alcohol per 210 liters of the breath, it *730 would be your duty to return a verdict of guilty. If you *555 do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.
Defendant argues the trial court erred in instructing the jury under N.C. Gen. Stat. § 20-138.1 (a)(2), and such error is reversible error. The State concedes the trial court erred in its jury instructions. However, the State contends any error was harmless error, and Defendant is not entitled to a new trial.
We agree with both Defendant and State and hold the trial court erred in instructing the jury under both N.C. Gen. Stat. § 20-138.1(a)(1) and (a)(2). Although disjunctive jury instructions are generally permissible for impaired driving, in this case, the State presented no evidence supporting the section 20-138.1(a)(2) instruction. Compare Oliver , 343 N.C. at 215, 470 S.E.2d at 24, with Johnson , 183 N.C.App. at 582, 646 S.E.2d at 127. Defendant did not properly participate in the Intoxilyzer test, and the State introduced no evidence of blood alcohol tests. As such, the trial court improperly instructed the jury on alternate theories, one of which the evidence did not support.
It is impossible to conclude, based upon the record and general verdict form, upon which theory the jury based its verdict. Our case law mandates our Court to "assume the jury based its verdict on the theory for which it received an improper instruction." State v. Petersilie , 334 N.C. 169, 193, 432 S.E.2d 832, 846 (1993) (citations omitted).
Furthermore, cannot agree with the State that the error was harmless or non-prejudicial. It is settled law this error entitles Defendant to a new trial. Under controlling case law:
[w]here the trial judge has submitted the case to the jury on alternative theories, one of which is determined to be erroneous and the other properly submitted, and we cannot discern from the record the theory upon which the jury relied, this Court will not assume that the jury based its verdict on the theory for which it received a proper instruction. Instead, we resolve the ambiguity in favor of the defendant.
State v. Pakulski , 319 N.C. 562, 574, 356 S.E.2d 319, 326 (1987) (citation omitted). See State v. Lynch , 327 N.C. 210, 219, 393 S.E.2d 811, 816 (1990) (holding such error entitled defendant to a new trial); Malachi , --- N.C.App. at ----, 799 S.E.2d at 648 ; State v. Jefferies , --- N.C.App. ----, ----, 776 S.E.2d 872, 880 (2015) ;
*556 Johnson , 183 N.C.App. at 585, 646 S.E.2d at 128 ; State v. Hughes , 114 N.C.App. 742, 746, 443 S.E.2d 76, 79 (1994) ; State v. O'Rourke , 114 N.C.App. 435, 442, 442 S.E.2d 137, 140 (1994) (citation omitted); State v. Dick , No. COA15-1400, --- N.C.App. ----, 2016 WL 5746395 (unpublished) (N.C. Ct. App. Oct. 4, 2016). See also State v. Porter , 340 N.C. 320, 331, 457 S.E.2d 716, 721 (1995) (citation omitted) ("Where jury instructions are given without supporting evidence, a new trial is required.").
Moreover, this is not a case where there is overwhelming evidence of Defendant's impaired driving. Before beginning the field sobriety tests, Defendant told Officer Monroe he suffers from knee pain. During the tests, Defendant told Officer Monroe he needed his knee pads to complete the tests. Officer Monroe testified Defendant lost his balance However, Defendant neither fell during the tests, nor did he stumble or try to lean upon anything for balance.
Accordingly, we vacate Defendant's conviction for impaired driving and grant him a new trial.
B. Expert Testimony
Defendant also contends the trial court erred by allowing Officer Monroe to testify as an expert in "the administration and interpretation" of the HGN test. Although the issue of expert testimony for the HGN test needs to be resolved, the record and arguments in this case are insufficient to address this issue. Because we grant Defendant a new trial based on the trial court's error in jury instructions, we need not address this issue on appeal.
IV. Conclusion
For the foregoing reasons, we vacate Defendant's conviction and grant him a new trial.
NEW TRIAL.
*731 Judge CALABRIA concurs.
Judge BERGER concurring in a separate opinion.

Officer Monroe explained to "lock the brakes up" means to employ the antilock brake on the motorcycle.