IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-1043

Filed 16 January 2024

McDowell County, Nos. 17 CRS 51009-10

STATE OF NORTH CAROLINA

      v.

ROBERT TODD GUFFEY, Defendant.

Appeal by Defendant from judgments entered 18 February 2022 by Judge Forrest D. Bridges in McDowell County Superior Court. Heard in the Court of Appeals 19 September 2023.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Asher P. Spiller, for the State.*
>
> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Aaron Thomas Johnson, for defendant-appellant.*

MURPHY, Judge.

When a defendant is charged with a continuing criminal enterprise, each act alleged to have constituted the enterprise is an essential element of the offense. As an indictment must allege all the essential elements of an offense, an indictment charging a defendant with a continuing criminal enterprise is invalid unless it specifies the acts alleged to have constituted the enterprise itself. Here, where the indictment charging Defendant with aiding and abetting a continuing criminal enterprise did not specify the acts alleged to have constituted the enterprise, the indictment was fatally defective.

However, the jury's verdict with respect to Defendant's separate charge of conspiracy to traffic in methamphetamine was not fatally ambiguous under our longstanding precedent pertaining to disjunctive conspiracy instructions, and no error occurred with respect to that charge.

## **BACKGROUND**

Defendant is an admitted participant in a drug trafficking enterprise appealing his 17 February 2022 convictions of conspiracy to traffic in methamphetamine and aiding and abetting a continuing criminal enterprise ("CCE"). The enterprise in question distributed meth, crack cocaine, opiate pills, and marijuana and moved quantities whose total dollar value was in the hundreds of thousands. However, by the State's own characterization, Defendant was neither an organizer nor employee of the principal operation, instead being a routine purchaser of drugs for resale with whom some more immediate members of the operation were familiar.

Defendant was indicted on 21 August 2017, and the indictments with which Defendant was charged provided as follows:

> The jurors for the State upon their oath present that on or about the date(s) of offense shown and in the county named above [] [D]efendant named above unlawfully, willfully and feloniously did conspire with Jamie Leonard Tate to commit the felony of trafficking by possession and transportation of 28 grams or more but less than 200 grams of methamphetamine.
>
> . . . .

2

> The jurors for the State upon their oath present that on or about the date(s) of offense shown and in the county named above [] [D]efendant named above unlawfully, willfully, and feloniously did aid and abet Jamie Leonard Tate and Dwayne Bullock in unlawfully, willfully, and feloniously engaging in a continuing criminal enterprise by violating [N.C.G.S. §] 90-95(h)(3b) by trafficking in methamphetamine. The violation was part of a continuing series of violations of Article 5 of Chapter 90 of the General Statutes, which Jamie Leonard Tate and Dwayne Bullock undertook in concert with more than five other persons, including Jackie Pearson, Marqueseo Pearson, Gregory Rutherford, Randy Scott, Aretha Fullwood, Aretha Giles, and Karita Bullock, with respect to whom Jamie Leonard Tate and Dwayne Bullock occupied a position of organizer, a supervisory position, and a management position, and from which Jamie Leonard Tate and Dwayne Bullock obtained substantial income and resources.

Defendant was tried beginning on 14 February 2022. During trial, Defendant made "[a] general motion to dismiss for insufficiency of the evidence[,]" arguing, in particular, that the evidence did not establish sufficient involvement in the criminal enterprise for purposes of the CCE charge and that the evidence also did not establish Defendant trafficked the amount of methamphetamine specified in the charge. The trial court denied the motion. When the jury returned its verdict, the verdict sheets indicated Defendant was "guilty of conspiracy to traffic[] in methamphetamine by possession or transportation of 28 grams or more, but less than 200 grams[,]" as well as "guilty of aiding and abetting a continuing criminal enterprise[.]"

## ANALYSIS

On appeal, Defendant argues both that the trial court lacked subject matter

jurisdiction over the charge of aiding and abetting a CCE because the indictment was fatally defective and that it erred in denying his motion to dismiss the charge of aiding and abetting a CCE because a defendant may not be guilty of that offense under a theory of aiding and abetting. He also argues both verdicts were fatally ambiguous because the jury was instructed disjunctively on two separate theories of trafficking to support both charges.

As we agree that the trial court lacked subject matter jurisdiction over the charge of aiding and abetting a CCE, we vacate that charge; therefore, we need not address whether, as a general matter, a defendant may be guilty of aiding and abetting a CCE or whether that verdict was fatally ambiguous. However, we hold that the jury's verdict with respect to conspiracy to traffic in methamphetamine was not fatally ambiguous and find no error with respect to that charge.

## A. Subject Matter Jurisdiction

We first address Defendant's argument that the charge of aiding and abetting a CCE in the indictment was fatally defective. Specifically, Defendant argues the trial court lacked subject matter jurisdiction over the offense because the indictment did not specify each of the offenses comprising the CCE. "Whether a trial court has subject-matter jurisdiction is a question of law, reviewed *de novo* on appeal." *State v. Herman*, 221 N.C. App. 204, 209 (2012) (citation omitted).

North Carolina defines the offense of continuing criminal enterprise in N.C.G.S. § 90-95.1:

(a) Any person who engages in a continuing criminal enterprise shall be punished as a Class C felon and in addition shall be subject to the forfeiture prescribed in subsection (b) of this section.

(b) Any person who is convicted under subsection (a) of engaging in a continuing criminal enterprise shall forfeit to the State of North Carolina:

(1) The profits obtained by him in such enterprise, and

(2) Any of his interest in, claim against, or property or contractual rights of any kind affording a source of influence over, such enterprise.

(c) For purposes of this section, a person is engaged in a continuing criminal enterprise if:

(1) He violates any provision of this Article, the punishment of which is a felony; and

(2) Such violation is a part of a continuing series of violations of this Article;

    a. Which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management; and

    b. From which such person obtains substantial income or resources.

N.C.G.S. § 90-95.1 (2022).

In interpreting a federal statute with nearly identical wording, *see* 21 U.S.C. § 848, the United States Supreme Court held in *Richardson v. United States* that each individual offense comprising a CCE constitutes an essential element of the offense:

> When interpreting a statute, we look first to the language. *United States v. Wells,* 519 U.S. 482, 490 (1997). In this case, that language may seem to permit either interpretation, that of the Government or of the petitioner, for the statute does not explicitly tell us whether the individual violation is an element or a means. But the language is not totally neutral. The words "violates" and "violations" are words that have a legal ring. A "violation"

5

is not simply an act or conduct; it is an act or conduct that is contrary to law. Black's Law Dictionary 1570 (6th ed.1990). That circumstance is significant because the criminal law ordinarily entrusts a jury with determining whether alleged conduct "violates" the law, see *infra,* at 822, and, as noted above, a federal criminal jury must act unanimously when doing so. Indeed, even though the words "violates" and "violations" appear more than 1,000 times in the United States Code, the Government has not pointed us to, nor have we found, any legal source reading any instance of either word as the Government would have us read them in this case. To hold that each "violation" here amounts to a separate element is consistent with a tradition of requiring juror unanimity where the issue is whether a defendant has engaged in conduct that violates the law. To hold the contrary is not.

The CCE statute's breadth also argues against treating each individual violation as a means, for that breadth aggravates the dangers of unfairness that doing so would risk. Cf. *Schad v. Arizona,* [501 U.S. 624, 645 (1991)] (plurality opinion). The statute's word "violations" covers many different kinds of behavior of varying degrees of seriousness. The two chapters of the Federal Criminal Code setting forth drug crimes contain approximately 90 numbered sections, many of which proscribe various acts that may be alleged as "violations" for purposes of the series requirement in the statute. Compare, *e.g.,* 21 U.S.C. §§ 842(a)(4) and (c) (1994 ed. and Supp. III) (providing civil penalties for removing drug labels) and 21 U.S.C. § 844(a) (Supp.III) (simple possession of a controlled substance) with 21 U.S.C. § 858 (endangering human life while manufacturing a controlled substance in violation of the drug laws) and § 841(b)(1)(A) (possession with intent to distribute large quantities of drugs). At the same time, the Government in a CCE case may well seek to prove that a defendant, charged as a drug kingpin, has been involved in numerous underlying violations. The first of these considerations increases the likelihood that treating violations simply as alternative means, by permitting a jury to avoid discussion of the specific factual details of

6

each violation, will cover up wide disagreement among the jurors about just what the defendant did, or did not, do. The second consideration significantly aggravates the risk (present at least to a small degree whenever multiple means are at issue) that jurors, unless required to focus upon specific factual detail, will fail to do so, simply concluding from testimony, say, of bad reputation, that where there is smoke there must be fire.

Finally, this Court has indicated that the Constitution itself limits a State's power to define crimes in ways that would permit juries to convict while disagreeing about means, at least where that definition risks serious unfairness and lacks support in history or tradition. *Schad v. Arizona,* 501 U.S., at 632-633 (plurality opinion); *id.*[] at 651 (SCALIA, J., concurring) ("We would not permit . . . an indictment charging that the defendant assaulted either X on Tuesday or Y on Wednesday . . ."). We have no reason to believe that Congress intended to come close to, or to test, those constitutional limits when it wrote this statute. See *Garrett v. United States,* 471 U.S. 773, 783-784[] . . . (1985) (citing H.R. Rep. No. 91-1444, pt. 1, pp. 83-84, (1970)) (in making CCE a separate crime, rather than a sentencing provision, Congress sought increased procedural protections for defendants); cf. *Gomez v. United States,* 490 U.S. 858, 864 (1989) ("It is our settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question"); *Ashwander v. TVA,* 297 U.S. 288, 346-348 (1936) (Brandeis, J., concurring).

*Richardson v. United States*, 526 U.S. 813, 818-20 (1999).

The United States Supreme Court's expression of constitutional concern with respect to CCE in *Richardson*, while avoided for prudential reasons in the opinion proper, was well-founded. *Id.* at 820; *cf. Matter of Arthur*, 291 N.C. 640, 642 (1977) ("If a statute is reasonably susceptible of two constructions, one of which will raise a

serious question as to its constitutionality and the other will avoid such question, it is well settled that the courts should construe the statute so as to avoid the constitutional question."). While the State has some latitude to "define different courses of conduct, or states of mind, as [] alternative means of committing a single offense," its ability to do so is not boundless under the Fourteenth Amendment's Due Process Clause. *Schad v. Arizona*, 501 U.S. at 632. "The axiomatic requirement of due process that a statute may not forbid conduct in terms so vague that people of common intelligence would be relegated to differing guesses about its meaning carries the practical consequence that a defendant charged under a valid statute will be in a position to understand with some specificity the legal basis of the charge against him." *Id.* at 632-33 (citations omitted) (citing *Lanzetta v. New Jersey,* 306 U.S. 451, 453 (1939)). For this reason, "no person may be punished criminally save upon proof of some *specific* illegal conduct." *Id.* at 633 (emphasis added).

Here, the specificity concerns raised by the United States Supreme Court in *Richardson* are fully present in the indictment. The indictment does not allege that the enterprise engaged in any specific conduct, only defining the CCE as "a continuing series of violations of Article 5 of Chapter 90 of the General Statutes" and generally naming the participants and their positions in the trafficking scheme's hierarchy. A juror would have no way of knowing how many criminal acts were committed within the organization or how Defendant's acts advanced them; while the indictment specifies that Defendant aided and abetted the CCE "by trafficking in

8

methamphetamine[,]" it says nothing of why the enterprise with which Defendant dealt constituted a CCE. Moreover, if such an indictment were sufficient as to the establishment of a CCE, a future indictment could permissibly invite little to no agreement from individual jurors as to in which acts a defendant actually participated.

While *Richardson* is not a directly binding authority as to the interpretation of North Carolina's statute, the command of the Due Process Clause is; and we, like the United States Supreme Court, will not construe a statute so as to jeopardize that statute's constitutionality. *Richardson*, 526 U.S. at 820; *Matter of Arthur*, 291 N.C. at 642. We therefore hold that each underlying act alleged under N.C.G.S. § 90-95.1 constitutes an essential element of the offense. Moreover, as "an indictment . . . must allege all the essential elements of the offense[,]" *State v. Rankin*, 371 N.C. 885, 887 (2018) (marks and citations omitted), we further hold that a valid indictment under N.C.G.S. § 90-95.1 requires the state to specifically enumerate the acts alleged.

Defendant's charge of aiding and abetting a CCE was therefore fatally defective, and we vacate the judgment on that charge. Having so held, Defendant's other arguments with respect to that charge are moot. *Roberts v. Madison Cty. Realtors Ass'n, Inc.*, 344 N.C. 394, 398-99 (1996) (marks and citations omitted) ("A case is moot when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy.")

**B. Motion to Dismiss**

We turn next to whether Defendant's conspiracy to traffic methamphetamine verdict was fatally ambiguous. Specifically, Defendant argues the verdict was "fatally ambiguous because it is not possible to determine from the indictments, evidence, jury instructions, and verdict sheets whether the jury unanimously found trafficking by *possession* versus trafficking by *transportation* . . . ."

"A verdict should be certain and import a definite meaning free from ambiguity, with an uncertain or ambiguous verdict being insufficient to support the entry of a judgment." *Chisum v. Campagna*, 376 N.C. 680, 710 (marks and citations omitted), *reh'g denied*, 377 N.C. 217 (2021). Jury verdicts are "fatally ambiguous in the event that the verdict sheet or the underlying instructions were vague, making it unclear precisely what the jury intended by its verdict." *Id.* As ambiguity in a jury verdict creates an issue of jury unanimity, we review this argument de novo. *See State v. Surrett*, 217 N.C. App. 89, 93 (2011) ("We review the existence of a unanimous jury verdict *de novo* on appeal . . . .").

Here, as Defendant's argument depends on the failure to distinguish between trafficking by possession and trafficking by transportation, a determinative question is whether these offenses, if presented to the jury in the disjunctive, would actually render the jury's verdict fatally ambiguous. Under our binding conspiracy precedent, the answer is no. "[O]ur case law has long embraced a distinction between unconstitutionally vague instructions that render unclear the offense for which the defendant is being convicted and instructions which instead permissibly state that

10

more than one specific act can establish an element of a criminal offense." *State v. Walters*, 368 N.C. 749, 753 (2016). On the one hand, "a disjunctive instruction[] [that] allows the jury to find a defendant guilty if he commits either of two underlying acts, *either of which is in itself a separate offense,* is fatally ambiguous because it is impossible to determine whether the jury unanimously found that the defendant committed one particular offense. In such cases, the focus is on the conduct of the defendant." *Id.* (marks omitted) (emphasis in original). On the other hand, "if the trial court merely instructs the jury disjunctively as to various alternative acts *which will establish an element of the offense,* the requirement of unanimity is satisfied. In this type of case, the focus is on the intent or purpose of the defendant instead of his conduct." *Id.* (marks omitted) (emphasis in original).

Where a conspiracy charge disjunctively lists multiple offenses, we have held that each underlying offense does not create a separate conspiracy, but is instead an alternative act by which a Defendant may be found guilty of the singular conspiracy alleged. In *State v. Overton*, the defendant's verdict sheet charged a conspiracy to "manufacture, possess with intent to sell and deliver *or* sell and deliver[] . . . heroin[,]" and the jury's verdict mirrored that use of the disjunctive. *State v. Overton*, 60 N.C. App. 1, 34 (1982), *disc. rev. denied*, 307 N.C. 581 (1983). Although we "acknowledge[d] that the verdict sheet was not artfully drawn," we nonetheless held that "[t]he parameters of the conspiracy could include either a conspiracy to manufacture *or* to possess with intent to sell or deliver *or* to sell and deliver heroin."

11

*Id.* We reasoned that the defendant "could not have been prejudiced by the inexact nature of this verdict form because the punishments for conspiracy to do any one of these three offenses are the same, and the trial court's judgment contained a sentence well within the statutory limits. *Id.* Moreover, in *State v. Davis*, we applied a similar principle to hold that a defendant "charged only with conspiracy to traffic in cocaine" was not subject to the risk of a non-unanimous verdict because "fact that the different methods of trafficking constitute separate offenses is immaterial." *State v. Davis*, 188 N.C. App. 735, 741 (2008) (citing *State v. McLamb,* 313 N.C. 572, 578-79 (1985)).

We are bound by this precedent and therefore hold the jury's verdict was not fatally ambiguous.

## CONCLUSION

Defendant's verdict with respect to conspiracy to traffic methamphetamine was not fatally ambiguous. However, as Defendant's judgment for aiding and abetting a CCE did not enumerate the acts alleged to have constituted the CCE as necessary elements of the offense, we vacate that judgment.

VACATED IN PART; NO ERROR IN PART.

Judge FLOOD concurs.

Judge STROUD concurs in part and dissents in part by separate opinion.

STROUD, Judge, concurring in part and dissenting in part.

While I concur with the majority's decision regarding the issue of a fatal ambiguity in the verdict, I write separately to dissent as to the indictment issue. Because the indictment was not fatally defective, the trial court had subject matter jurisdiction, and I would find no error as to the indictment of continuing criminal enterprise ("CCE").

## I.   Indictment

It is well-established that

> [t]o be sufficient, an indictment must include, inter alia, a plain and concise factual statement asserting facts supporting every element of a criminal offense and the defendant's commission thereof. If the indictment fails to state an essential element of the offense, any resulting conviction must be vacated. The law disfavors application of rigid and technical rules to indictments; so long as an indictment adequately expresses the charge against the defendant, it will not be quashed.

*State v. Rankin*, 371 N.C. 885, 886-87, 821 S.E.2d 787, 790-91 (2018) (citations, quotation marks, and brackets omitted).  Our Supreme Court has clearly stated "the purpose of an indictment is to put the defendant on notice of the crime being charged and to protect the defendant from double jeopardy." *State v. Newborn*, 384 N.C. 656, 659, 887 S.E.2d 868, 871 (2023) (citation omitted).  "[T]he traditional test is whether the indictment alleges facts supporting the essential elements of the offense to be charged." *Id*.

North Carolina General Statute Section 90-95.1 establishes the criminal charge of CCE, stating:

> (a)     Any person who engages in a . . . [CCE] shall be punished as a Class C felon and in addition shall be subject to the forfeiture prescribed in subsection (b) of this section.
>
> (b)     Any person who is convicted under subsection (a) of engaging in a . . . [CCE] shall forfeit to the State of North Carolina:
>
> > (1) The profits obtained by him in such enterprise; and
> >
> > (2) Any of his interest in, claim against, or property or contractual rights of any kind affording a source of influence over, such enterprise.
>
> (c)     For purposes of this section, a person is engaged in a .. . . [CCE] if:
>
> > (1) He violates any provision of this Article, the punishment of which is a felony; and
> >
> > (2) Such violation is a part of a continuing series of violations of this Article;
> >
> > > a. Which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management; and
> > >
> > > b. From which such person obtains substantial income or resources.

N.C. Gen. Stat. § 90-95.1 (2021).

The indictment charging Defendant with CCE stated:

> The jurors for the State upon their oath present that on or about the date(s) of offense shown and in the county named above [Defendant] named above unlawfully, willfully, and feloniously did aid and abet Jamie Leonard Tate and Dwayne Bullock in unlawfully, willfully, and feloniously engaging in a . . . [CCE] by violating G.S. 90-95(h)(3b) by trafficking in methamphetamine. The violation was part of a continuing series of violations of Article 5 of Chapter 90 of the General Statutes, which Jamie Leonard Tate and Dwayne Bullock undertook in concert with more than five other persons, including Jackie Pearson, Marqueseo Pearson, Gregory Rutherford, Randy Scott, Aretha Fullwood, Aretha Giles, and Karita Bullock, with respect to whom Jamie Leonard Tate and Dwayne Bullock occupied a position of organizer, a supervisory position, and a management position, and from which Jamie Leonard Tate and Dwayne Bullock obtained substantial income and resources.

The majority relies on a United States Supreme Court case, *Richardson v. United States*, 526 U.S. 813, 143 L.E.2d 985 (1999), to determine "each underlying act alleged under N.C.G.S. § 90-95.1 constitutes an essential element of the offense." However, as the majority noted, this decision is not binding on this Court as to North Carolina's CCE statute since *Richardson* was interpreting a federal statute, not North Carolina's statute. *See generally id.* I believe, under current North Carolina case law, North Carolina's law is more in line with the dissenting opinion in *Richardson* than the majority opinion. The dissenting justices would have held that an indictment alleging CCE need not allege each underlying act that is the basis for this type of charge. As the dissent in *Richardson* notes, requiring the government to specifically allege the underlying acts that constitute a CCE charge "is a substantial

departure from what Congress intended." *Richardson*, 526 U.S. at 826, 143 L.E.2d at 998 (Kennedy, J., dissenting).

Here, the indictment specifically alleged Defendant aided and abetted Jamie Leonard Tate and Dwayne Bullock by "engaging in a . . . [CCE] by violating G.S. 90-95(h)(3b) by trafficking in methamphetamine[,]" which is a felony offense under North Carolina law. *See* N.C. Gen. Stat. § 90-95(h)(3b) (2021). The indictment specifically alleged this felony offense was part of a "continuing series of violations of Article 5 of Chapter 90 of the General Statutes" and states Defendant undertook the violations "in concert with more than five other persons[,]" naming each person, and alleging Jamie Leonard Tate and Dwayne Bullock "occupied a position of organizer, a supervisory position, and a management position, and from which Jamie Leonard Tate and Dwayne Bullock obtained substantial income and resources."

The indictment tracks the statutory language of North Carolina General Statute Section 90-95.1 by naming the underlying felony offense as required by subsection 90-95.1(c)(1); expressly stating the person was part of a "continuing series of violations" as required by subsection 90-95.1(c)(2); the violations were in concert with five other people and the person occupied a "position of organizer, a supervisory position, and a management position" as required by subsection 90-95.1(c)(2)(a); and the person "obtained substantial income and resources" as required by subsection 90-95.1(c)(2)(b). *See* N.C. Gen. Stat. § 90-95.1.

Since, as the dissent in *Richardson* also notes, the underlying violations that constitute the CCE charge could involve "hundreds or thousands of sales[,]" and the indictment is sufficient under North Carolina law to put Defendant on notice and tracks the statutory language, I would hold there was no error with respect to the indictment of the CCE charge. *Richardson,* 526 U.S. at 826, 143 L.E.2d at 998 (Kennedy, J., dissenting); *see Newborn*, 384 N.C. at 659, 887 S.E.2d at 871 ("[T]he purpose of an indictment is to put the defendant on notice of the crime being charged and to protect the defendant from double jeopardy." (citation omitted)); *see also State v. Greer*, 238 N.C. 325, 328, 77 S.E.2d 917, 920 (1953) ("The general rule in this state and elsewhere is that an indictment for a statutory offense is sufficient, if the offense is charged in the words of the statute, either literally or substantially, or in equivalent words." (citation omitted)).

## II.   Motion to Dismiss

Defendant also argues "[t]he trial court erred by denying [Defendant's] motion to dismiss the CCE charge where a defendant cannot be guilty of that offense based on a theory of aiding and abetting[.]" While the majority did not discuss this argument since it concludes the indictment was fatally defective, I will briefly discuss the issue since I would conclude there was no error as to the indictment.

The State's evidence tended to show that Jamie Tate and Dwayne Bullock were leaders of a criminal enterprise specifically related to drug trafficking. As the majority notes, the criminal enterprise trafficked various drugs and collected

hundreds of thousands of dollars from the trafficking enterprise. Defendant's role in this enterprise was limited to purchasing drugs from Jamie Tate and Dwayne Bullock, or their associates, and re-selling the drugs. There is no indication that Defendant was under the direction or control of Jamie Tate or Dwayne Bullock, or was otherwise involved in the enterprise aside from purchasing drugs to re-sell.

At the close of the State's evidence, Defendant made a motion to dismiss for insufficiency of the evidence, which the court did not rule on. Defendant did not testify on his own behalf or present any evidence, and renewed his motion to dismiss at the close of all evidence. The trial court ultimately denied the motions to dismiss.

Defendant's argument is essentially that he could not be convicted of aiding and abetting a criminal enterprise since he was not involved in any leadership role, and his purchase of drugs from the enterprise was a small part of the enterprise's overall operation. Defendant discusses federal caselaw regarding the federal equivalent to North Carolina's CCE statute, stating:

> The Second Circuit has held that a defendant cannot be guilty of the offense based on this theory of vicarious liability, while the Seventh Circuit, sitting *en banc*, concluded that a defendant can be liable as an aider and abettor under some circumstances. Both circuits concluded, however, that such aiding-and-abetting liability should not exist where, as here, the defendant is an employee or agent of the CCE.

Defendant cites to *United States v. Pino-Perez*, 870 F.2d 1230 (7th Cir. 1989) (*en banc*) and *United States v. Amen*, 831 F.2d 373 (2nd Cir. 1987).

While I would not conclude a defendant can *never* be charged as an aider and abettor to a CCE, I would conclude, under these facts, the trial court erred by not dismissing the CCE charge. The State correctly notes that "aider and abettor liability in North Carolina is a principle of common law." *See State v. Goode*, 350 N.C. 247, 260, 512 S.E.2d 414, 422 (1999) (laying out the common law elements of aider and abettor liability). The plain language of North Carolina General Statute Section 90-95.1 abrogates aider and abettor liability for those who are not in a management or leadership position in a criminal enterprise. *See* N.C. Gen. Stat. § 90-95.1; *see also State v. James*, 371 N.C. 77, 87, 813 S.E.2d 195, 203 (2018) ("The intent of the General Assembly *may be found first from the plain language* of the statute[.] If the language of a statute is clear, the court must implement the statute according to the plain meaning of its terms so long as it is reasonable to do so." (emphasis added) (citation omitted)).

North Carolina General Statute Section 90-95.1(c) states:

> (c)    For purposes of this section, a person is engaged in a . . . [CCE] if:
>
>> (1) He violates any provision of this Article, the punishment of which is a felony; and
>>
>> (2) Such violation is a part of a continuing series of violations of this Article;
>>
>>> a. Which are undertaken by such person in concert with five or more other persons *with respect to whom such person occupies a position of organizer,*

> *a supervisory position, or any other position of management*; and
>
> b. From which such person obtains substantial income or resources.

*Id*. (emphasis added).

Subsection (c)(2)(a) states a person who "occupies a position of organizer, a supervisory position, or any other position of management" can be liable for a CCE charge. N.C. Gen. Stat. § 90-95.1(c)(2)(a). Thus, the plain meaning of the words "organizer," "supervisor," and "management" will control the meaning of the statute. *See James*, 371 N.C. at 87, 813 S.E.2d at 203. "Organizer" means "one that organizes[,]" which means "to cause to develop an organic structure[,] to form into a coherent unity or functioning whole[,] to set up an administrative structure for[,] to persuade to associate in an organization[,] to arrange by systematic planning and united effort[.]" Merriam-Webster's Collegiate Dictionary 874 (11th ed. 2003). "Supervisor" means "one that supervises; an administrative officer in charge of business, government, or school unit or operation[.]" Merriam-Webster's Collegiate Dictionary 1255 (11th ed. 2003). "Management" means "the act or art of managing: the conducting or supervising of something[,] judicious use of means to accomplish an end[,] the collective body of those who manage or direct an enterprise[.]" Merriam-Webster's Collegiate Dictionary 754 (11th ed. 2003).

Taken together, the clear legislative intent of North Carolina General Statute Section 90-95.1 is that it should apply to those who are drug kingpins, not those who

are not involved in the overall enterprise leadership structure. *See* N.C. Gen. Stat. § 90-95.1. Holding to the contrary would impose criminal liability under a theory of CCE for any person who purchases drugs from a criminal enterprise, which the General Assembly did not intend. *See id.* Here, it is undisputed Defendant was involved in the purchase and distribution of large quantities of illegal drugs, and he was charged and convicted of those crimes. Those convictions are not affected by this appeal. But the evidence was clear that Defendant's role in this enterprise was limited to purchasing drugs from Jamie Tate and Dwayne Bullock, or their associates, and re-selling the drugs. The State even conceded at trial that Defendant "wasn't a kingpin. So you can treat him differently than you would the kingpin." In the State's brief to this Court, it again conceded that "Tate and Bullock soon formed [a] close-knit organization of 'seven or eight' associates and family members who ran the drug-trafficking enterprise[,]" listing "[t]he individuals under Tate and Bullock's supervision[,]" without listing Defendant. The State does not characterize Defendant as an employee of the organization, while it specifically referred to the seven listed individuals as employees of the organization.

While it is clear and undisputed that Defendant sold drugs obtained by the criminal enterprise, it is also clear Defendant was not one of the organizers, supervisors, or managers listed in North Carolina General Statute Section 90-95.1. *See* N.C. Gen. Stat. § 90-95.1(c)(2)(a). Since North Carolina General Statute Section 90-95.1 demonstrates a clear legislative intent to punish those acting as drug

kingpins, I would conclude the trial court erred in not dismissing the CCE charge at the close of all evidence.

For the reasons outlined above, I concur in part and dissent in part.